1  Matthew D. Pearson, Bar No. 294302
   mpearson@bakerlaw.com
2  **BAKER & HOSTETLER LLP**
   600 Anton Blvd, Suite 900
3  Costa Mesa, California 92626-7221
   Telephone:  714.754.6600
4  Facsimile:   714.754.6611

5  Attorneys for Defendant
   SOUTHWEST AIRLINES CO.

6

7

8

9  **UNITED STATES DISTRICT COURT**

10  **SOUTHERN DISTRICT OF CALIFORNIA**

11  *In Re: Southwest Airlines Co. Flight*          Lead Case No. 3:23-cv-00306-AJB-SBC
    *Disruption Litigation*                          Consolidated with:
12                                                    Case No. 3:23-cv-00313-AJB-SBC
                                                      Case No. 3:23-cv-00633-AJB-SBC
13  This Document Relates to: All Actions

14                                                   **MEMORANDUM OF POINTS AND
                                                     AUTHORITIES IN SUPPORT OF
15                                                   DEFENDANT'S MOTION TO
                                                     DISMISS PLAINTIFFS'
16                                                   CONSOLIDATED SECOND
                                                     AMENDED CLASS ACTION
17                                                   COMPLAINT**

18
                                                     [Filed concurrently with Notice of
19                                                   Motion and (Proposed) Order]

20                                                   **Hearing**
                                                     **Date:**          **November 7, 2024**
21                                                   **Time:**          **2:00 p.m.**
                                                     **Courtroom:**     **4A (4th Flr.)**
22

23                                                   Action Filed: February 15, 2023
                                                     Complaint Served: March 1, 2023
24

25

26

27

28

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
COSTA MESA

# TABLE OF CONTENTS

I.    INTRODUCTION ............................................................................................. 1

II.    PROCEDURAL POSTURE ............................................................................ 3

    A.    Order Granting Southwest's Motion to Dismiss ............................. 3

III.    PLAINTIFFS' ALLEGATIONS IN THE SAC ...................................... 4

    A.    Plaintiffs' Breach of Contract Claim ............................................... 4

    B.    Plaintiffs' Breach of the Implied Covenant Claim ........................ 6

    C.    Plaintiffs' Violation of Bailment Claim ......................................... 6

IV.    MOTION TO DISMISS STANDARD ..................................................... 7

V.    ARGUMENT ..................................................................................................... 7

    A.    Plaintiffs Fail to State an Actionable Breach of Contract. ........... 7

        1.    Plaintiffs Fail to Plausibly Allege a Breach of the CoC. ................. 8

        2.    Plaintiffs Fail to Plausibly Allege Recoverable Damages. ............. 9

        3.    Southwest's Customer Service Plan Is Not a Contract. ................. 12

    B.    Plaintiffs' Claim for Breach of the Implied Covenant Fails as a Matter of Law ........................................................................................ 13

    C.    Plaintiffs' Bailment Claim Must Be Dismissed (Again) ............................ 14

VI.    CONCLUSION ............................................................................................... 18

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
COSTA MESA

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adolph Coors Co. v. Rodriguez*,
780 S.W.2d 477 (Tex.App.—Corpus Christi 1989, writ denied) .............................. 14

*Alpine Fresh, Inc. v. Jala Trucking Corp.*,
181 F. Supp. 3d 250 (D.N.J. 2016) ............................................................... 16

*Apatow v. Am. Bankers Ins. Co. of Fla.*,
No. 16-198 MWF, 2016 WL 7422288 (C.D. Cal. Dec. 21, 2016)
(Fitzgerald, J.) ...................................................................................... 7

*Arthur's Garage, Inc. v. Racal-Chubb Sec. Sys., Inc.*,
997 S.W.2d 803 (Tex. App. 1999) ................................................................ 12

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ................................................................................ 7

*Baker v. Int'l Rec. Syndicate, Inc.*,
812 S.W.2d 53 (Tex. App. 1991) ................................................................. 11

*Bary v. Delta Airlines, Inc.*,
No. CIV.A.CV025202(DGT), 2009 WL 3260499 (E.D.N.Y. Oct. 9,
2009), *aff'd*, 553 F. App'x 51 (2d Cir. 2014) ................................................. 15

*BCC Merch. Sols., Inc. v. Jet Pay, LLC*,
No. 3:12-CV-5185-B, 2015 WL 9259056 (N.D. Tex. Dec. 18, 2015) ...................... 10

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ................................................................................ 7

*Bensono v. Indymac Mortg. Servs.*,
No. 02-13-00197-CV, 2014 WL 787851 (Tex. App. Feb. 27, 2014) ......................... 7

*Cole v. Hall*,
864 S.W.2d 563 (Tex. App. 1993), *writ dismissed w.o.j.* (June 22, 1994) ................ 14

*Crim Truck & Tractor v. Navistar International Transportation Corp.*,
823 S.W.2d 591 (Tex.1992) ....................................................................... 14

*Deiro v. Am. Airlines, Inc.*,
816 F.2d 1360 (9th Cir. 1987) .................................................................... 10

*El Paso Mktg., L.P. v. Wolf Hollow I, L.P.*,
383 S.W.3d 138 (Tex. 2012) ...................................................................... 12

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
COSTA MESA

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
COSTA MESA

*Federal Deposit Insurance Corp. v. Coleman*,
   795 S.W.2d 706 (Tex.1990)..................................................................14

*Fox Elec. Co. v. Tone Guard Sec., Inc.*,
   861 S.W.2d 79 (Tex. App. 1993)..........................................................12

*Garden Ridge, L.P. v. Advance Int'l, Inc.*,
   403 S.W.3d 432 (Tex. App. 2013)........................................................11

*Gotch v. Gotch*,
   416 S.W.3d 633 (Tex. App. 2013)........................................................12

*Head v. U.S. Inspect DFW, Inc.*,
   159 S.W.3d 731 (Tex. App. 2005)........................................................10

*Hekmat v. U.S. Transportation Sec. Admin.*,
   247 F. Supp. 3d 427 (S.D.N.Y. 2017)..................................................15

*Innova Hosp. San Antonio, L.P. v. Blue Cross & Blue Shield of Georgia, Inc.*,
   995 F. Supp. 2d 587 (N.D. Tex. 2014) .................................................13

*Kansas City S. v. Port of Corpus Christi Auth. of Nueces Cnty.*,
   305 S.W.3d 296 (Tex. App. 2009)........................................................12

*Lovell v. Western National Life Insurance Co.*,
   754 S.W.2d 298 (Tex.App.—Amarillo 1988, writ denied) .....................14

*Lyda Swinerton Builders, Inc. v. Oklahoma Sur. Co.*,
   903 F.3d 435 (5th Cir. 2018) .............................................................13

*Nance v. Resolution Trust Corp.*,
   803 S.W.2d 323 (Tex.App.—San Antonio 1990), writ denied .................14

*Peche v. Wavle*,
   No. SA19CA1217FBHJB, 2020 WL 7973919 (W.D. Tex. Apr. 28, 2020) .................................................................................................19

*Phillips v. Phillips*,
   820 S.W.2d 785 (Tex. 1991)................................................................11

*Roberts v. Dayton Hudson Corp.*,
   914 F. Supp. 1421 (N.D. Tex. 1996) ...................................................14

*Sam L. Majors Jewelers v. ABX, Inc.*,
   117 F.3d 922 (5th Cir. 1997) .............................................................10

*Stuart v. Bayless*,
    964 S.W.2d 920 (Tex. 1998).............................................................. 10

*Sw. Associated Tel. Co. v. City of Dalhart*,
    254 S.W.2d 819 (Tex. Civ. App. 1952) ........................................... 17

*Valence Operating Co. v. Dorsett*,
    164 S.W.3d 656 (Tex. 2005).............................................................. 11

*Vallance & Co. v. DeAnda*,
    595 S.W.2d 587 (Tex. Civ. App. 1980) ........................................... 12

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
COSTA MESA

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
COSTA MESA

## I.      **INTRODUCTION**

In December 2022, Southwest Airlines suffered a significant operational disruption, resulting in thousands of cancelled flights. Plaintiffs had each purchased a reservation for air travel, and they were unable to fly as planned. Within weeks of the disruption—and despite a robust refund and reimbursement process—Plaintiffs began filing suit. Ultimately, the lawsuits were consolidated in this Court, which granted Southwest's motion to dismiss in June 2024 with leave for Plaintiffs to amend. [Dkt. No. 36.] Plaintiffs filed an amended complaint with three reformulated claims.

In short, this second attempt to meet the federal pleading standard fails, and the Court should dismiss Plaintiffs' claims, this time with prejudice.

*First*, Plaintiffs' newly contrived breach-of-contract theory—that Southwest breached its Contract of Carriage (CoC) by failing to provide Plaintiffs with alternative air transportation within a "reasonable" time following cancellation of their originally scheduled flights—has no legal basis. "Within a reasonable time" appears nowhere in the relevant contractual provision and inserting such a term—as Plaintiffs ask the Court to do here—would contradict express language that the offer of alternative transportation is limited to the "next flight(s) *on which space is available* to the Passenger's intended destination." Plaintiffs do not allege that an alternative flight to their intended destination existed, let alone that such a flight had available space. Instead, they allege that *no flights had space available* due to a days-long, mass cancellation of flights. [Dkt. No. 37, ¶ 70 ("Defendants had no future flights with space available…").][1] Southwest has not breached the CoC if there are no flights with available space to offer the passenger. To hold otherwise would

---

[1] Plaintiff Smith, in contrast to the general allegations and those of other Plaintiffs, alleges that she was ultimately offered the next flight on which space was available but that she declined to fly. However, that too is not a breach. [Dkt. No. 37, ¶ 143.]

enlarge Southwest's contractual obligations far beyond the express terms of the CoC, as Southwest would have to find available space when none exists.

Just as important, Plaintiffs fail to allege recoverable damages. They do not dispute that the CoC expressly precludes them from seeking "consequential, compensatory, indirect, incidental, or punitive damages arising out of or in connection with the performance of its obligations under th[e] [CoC]." Rather, Plaintiffs contend that this clear-cut limitation of liability provision is an "unlawful liquidated damages penalty under Texas law." But just the opposite is true: the provision *restricts* the damages available rather than provides for a certain amount of liquidated damages. And Texas courts applying Texas law have routinely upheld such provisions.[2]

*Second*, Plaintiffs reassert their breach of the implied covenant of good faith claim without alleging facts sufficient to support a duty of good faith under Texas law. They do not dispute that Texas law applies; instead, they assert, in conclusory fashion, that Southwest had a "special relationship with Plaintiffs" because "there was unequal bargaining power between Southwest and Plaintiff airline customers/passengers and a risk exists that Southwest may take advantage of them based upon the imbalance of power." That is not a "special relationship" under Texas law. That is a consumer relationship, nothing more.

*Third,* Plaintiffs' reformulated bailment claim fails because it alleges neither a cognizable breach nor compliance with the requisite conditions precedent. With respect to breach, Plaintiffs do not identify a contractual provision that has been breach, relying instead on tort duties that this Court has already found preempted. With respect to conditions precedent, the CoC details the steps a passenger must take

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
COSTA MESA

---

[2] To the extent Plaintiffs base their claim on Southwest's Customer Service Plan, the CoC makes clear that the plan "is not a contract, and does not create any contractual obligations on the part of" Southwest.

2

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS PLAINTIFFS'
CONSOLIDATED SECOND AMENDED CLASS ACTION COMPLAINT
CASE NO. 3:23-CV-00306-AJB-AGS

to assert a claim for delayed luggage, and Plaintiffs do not allege that they followed them.

In sum, Plaintiffs have yet to assert a viable claim against Southwest despite numerous complaints and a prior dismissal order that identified the deficiencies with their claims. The Court should dismiss Plaintiffs' claims again and this time, with prejudice.

## II.   PROCEDURAL POSTURE

### A.   Order Granting Southwest's Motion to Dismiss

On June 11, 2024, the Court issued an order on Southwest' Motion to Dismiss Plaintiffs' Consolidated Amended Class Action Complaint (CAC), dismissing it in its entirety but providing Plaintiffs with leave to amend.  [Dkt. No. 36.]  The Court made several findings that apply with equal force and effect to this Motion to Dismiss.

First, the Court found that the CoC's Texas choice-of-law provision was enforceable, and, therefore, Texas law applied to Plaintiffs' contract claims. [Dkt. No. 36, 7:27-28 ("Accordingly, the Court will apply Texas law to Plaintiffs' contractual claims[.]").]

Second, the Court held that (1) Texas law applied to Plaintiffs' breach of the implied covenant claim; (2) Texas law (unlike California law) does not imply into every contract the implied duty of good faith and fair dealing; (3) Plaintiffs had not established that a "special relationship of trust and confidence exists between" Southwest and them; and (4) Plaintiffs and Southwest expressly disclaimed application of the implied covenant. Thus, Plaintiffs' implied covenant claim failed. [*Id.* at 8:2-25.]

Third, the Court concluded that Plaintiffs' breach of contract claim based on Southwest's alleged "fail[ure] to make transport available 'at no additional charge on Southwest Airlines next flight(s) on which space is available to the Passenger's intended destination" was inadequately pleaded because "[n]owhere [in the CAC]

3

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
COSTA MESA

does Plaintiffs' breach of contract claim allege Southwest…breached the contract by failing to rebook them on another Southwest flight **with availability** within a reasonable time." [*id.* at 9:3-14 (emphasis added).]

Fourth, the Court found that, even if Plaintiffs had actually pleaded a breach of contract, the claim would still fail because Plaintiffs did not respond to Southwest's argument "that the CoC disclaims liability for consequential or incidental damages." [*Id.* at 11:2-6.]

Fifth, the Court held that Plaintiffs' bailment claim failed because the CoC detailed the conditions precedent for bringing such a claim, and "Plaintiffs do not claim to have met these necessary conditions." [*Id.* at 13:2-3.]

## III.   **PLAINTIFFS' ALLEGATIONS IN THE SAC**

Plaintiffs assert three claims in their Consolidated Second Amended Class Action Complaint (SAC): (1) breach of contract, (2) breach of the implied covenant of good faith and fair dealing, and (3) violation of bailment. Plaintiffs implicitly admit in the SAC that Texas law applies to their three claims by, among other things, repeatedly citing to Texas law. [*See, e.g.*, Dkt. No. 37, ¶¶ 10, 73-74, 149, 168.]

### A.   **Plaintiffs' Breach of Contract Claim**

Plaintiffs assert that their breach of contract claim is "based on Southwest's breaches of its Contract of Carriage and/or Customer Service Plan[.]" [*Id.* at ¶ 135.] Plaintiffs refer to the CoC and the Customer Service Plan collectively as "the Contract." [*Id.*] The Customer Service Plan, however, is not incorporated by reference into the CoC and, per the CoC's own language, "is not a contract, and does not create any contractual obligations on the part of" Southwest. [*Id.* at Ex. A, § 10(b)(1).] Regardless, Plaintiffs do not identify a single provision contained in the Customer Service Plan that they claim Southwest failed to abide by.

With regard to the CoC, Plaintiffs identify a single provision—§ 9(a)(1)—that they claim Southwest breached. [Dkt. No. 37, ¶ 140.] That provision reads, in full:

4

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS PLAINTIFFS'
CONSOLIDATED SECOND AMENDED CLASS ACTION COMPLAINT
CASE NO. 3:23-CV-00306-AJB-AGS

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
COSTA MESA

**9. Service Interruptions**
     ***
   a. Failure to Operate as Scheduled
     (1) Canceled Flights or Irregular Operations. In the event the Carrier cancels or fails to operate any flight according to Southwest Airlines published schedule, or significantly changes the schedule of any flight, or there is a significant delay, Carrier will, at the request of a Passenger with a confirmed Ticket on such flight, take one of the following actions:
        (i) Transport the Passenger at no additional charge on Southwest Airlines next flight(s) on which space is available to the Passenger's intended destination, in accordance with Southwest Airlines established re-accommodation practices; or
        (ii) Following a request by the Customer, refund the unused portion of the Customer's fare in accordance with Section 4.c.

[Dkt. No. 37, Ex. A, § 9(a)(1).]

Plaintiffs contend that Southwest breached this provision because although "Plaintiffs requested that Southwest transport them on the next flight(s) on which space is available to their intended destination,…Southwest was unable to do this within a reasonable period of time after cancelation." [*Id.* at ¶ 142.]   Notably, Plaintiffs do not allege that there **were** Southwest flights "on which space was available to their intended destination" that (1) were departing within a "reasonable time" and (2) that Southwest **could have** offered them but did not. In fact, they claim that Southwest breached the CoC specifically because there were no such available flights. [*See id.* at ¶¶ 28 (alleging, with regard to Plaintiff Grove, that "Southwest was unable to rebook him on a same day flight"), 144 (alleging, with regard to Plaintiff Pina, that Southwest "was not able to transport her").] In fact, Plaintiff Smith alleges that Southwest did rebook her "on the next available flight," but she choose not to take it. [*Id.* at ¶ 143.]

**B.     Plaintiffs' Breach of the Implied Covenant Claim**

With the exception of two conclusory and legally unsupported allegations, Plaintiffs' breach of the implied covenant claim in the SAC mirrors their breach of the implied covenant claim in the CAC that was dismissed. [*Compare* Dkt. No. 37, ¶¶ 160, 162 *with* Dkt. No. 23, ¶¶ 139, 141.]

The only difference between Plaintiffs' breach of implied covenant claim in the SAC and Plaintiffs' breach of the implied covenant claim in the CAC is that, in the SAC, Plaintiffs now allege that "Southwest had a duty of good faith and fair dealing due to its special relationship with Plaintiffs, where there was unequal bargaining power between Southwest and Plaintiff airline customers/passengers and a risk exists that Southwest may take advantage of them based upon the imbalance of power," [Dkt. No. 37, ¶ 157]; and (2) "Southwest is a common carrier in the business of carrying passengers and goods, and holds itself out for hire. As a common carrier, Southwest is held to a higher standard and degree of care to passengers," [*id.* at ¶ 158].

**C.     Plaintiffs' Violation of Bailment Claim**

In support of their bailment claim, Plaintiffs assert the following: (1) "[i]n delivering and entrusting their luggage, Plaintiffs and Class members intended and understood that Defendants would adequately safeguard their luggage," [Dkt. No. 37, ¶ 172]; (2) "by accepting possession of Plaintiffs' and Class members' luggage, Defendants understood that Plaintiffs and other Class members expected it to adequately safeguard their luggage," [*Id.* at ¶ 173]; (3) Southwest, therefore, "owed Plaintiffs and all other Class members a duty of care to safeguard their luggage by maintaining adequate procedures and infrastructure to protect such luggage," [*id.* at ¶ 174]; and (4) Southwest breached that duty, resulting in Plaintiff Smith "experience[ing] a significant delay in receiving her luggage that lasted twelve hours," [*id.* at ¶ 182].

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
COSTA MESA

Plaintiffs also allege that although "[t]he CoC requires passengers to" both "notify Southwest of the claim and receive a baggage number" and "submit either a completed Lost/Delayed Report Receipt or a written correspondence" [*id.* at ¶¶ 177-178], their failure to do so should be excused because (1) "at the time of the cancelations, Southwest's call center was shut down" [*id.* at ¶ 179], (2) Southwest was "unresponsive to Plaintiffs' request for their baggage" [*id.*], (3) "long lines were formed at Southwest ticketing desks at the airport" [*id.* at ¶ 180], and (4) Southwest employees were telling passengers "that they were not sure what was going on" and "had no idea how long [the situation] would last" [*id.*].

## IV.    MOTION TO DISMISS STANDARD

"In ruling on a motion under Rule 12(b)(6), [this] Court follows *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)." *Apatow v. Am. Bankers Ins. Co. of Fla.*, No. 16-198 MWF (MRWX), 2016 WL 7422288, at *2 (C.D. Cal. Dec. 21, 2016) (Fitzgerald, J.). "To survive a motion to dismiss, a complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face." *Id.* (internal quotation marks and alterations omitted). The Court "need not accept as true . . . threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* (internal citation and quotation marks omitted). Indeed, the "Court, based on judicial experience and common-sense, must determine whether a complaint plausibly states a claim for relief." *Id.*

## V.    ARGUMENT

### A.    Plaintiffs Fail to State an Actionable Breach of Contract.

"The elements of a breach of contract claim are (1) the existence of a valid contract, (2) performance or tendered performance by the plaintiff, (3) breach of the contract by the defendant, and (4) resulting damages to the plaintiff.") (*Bensono v. Indymac Mortg. Servs.*, No. 02-13-00197-CV, 2014 WL 787851, at *1 (Tex. App. Feb. 27, 2014).) That is, absent a valid contract, a breach by the defendant, or

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
COSTA MESA

7

recoverable damages suffered by the plaintiff, there is no claim.  Plaintiffs' claim fails to allege any of those three elements.  It, therefore, must be dismissed.

### 1.  Plaintiffs Fail to Plausibly Allege a Breach of the CoC.

Initially, Plaintiffs alleged that Southwest breached the CoC by "failing to provide refunds." [Dkt. No. 23, ¶ 133.]  Following the dismissal of their breach of contract claim, Plaintiffs pivoted, now claiming that Southwest's breach was not its failure to provide refunds but, instead, the inability to provide Plaintiffs with another flight "on which space was available to the [Plaintiffs'] intended destination(s)" "within a reasonable period of time after cancelation." [Dkt. No. 37, ¶¶ 141-142.]

To make this claim, Plaintiffs insert a "reasonable period of time" requirement into Section 9(a)(1) of Southwest's CoC. Yet the relevant prong of that section says no such thing. Rather, the opassenger may request that Southwest "[t]ransport the Passenger at no additional charge on Southwest Airlines **next flight(s) on which space is available to the Passenger's intended destination**…" Absent from this section is any requirement that Southwest provide the "next flight on which space is available" within a reasonable period of time.

Plaintiffs previously argued that where a contract is silent as to the time period during which an event must take place, courts can infer a "reasonable time period" limitation. But this ignores the nature of Southwest's obligation and mistakes the limited scope of any such inference. If Southwest (1) has no flight available to the intended destination or (2) a flight exists but there is no space available, Southwest has not breached Section 9(a)(1). In that instance, the passenger's recourse is to request a refund.

An inferred "reasonable time" requirement is necessarily limited to the parties' express agreement; it cannot be used to rewrite it. Put differently, if a flight is available and there is space, it might be reasonable to require that transport be provided to a passenger in a timely fashion. But requiring Southwest to conjure up a flight with available space when none exists within "a reasonable period of time"—

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
COSTA MESA

as Plaintiffs have argued—places a wholly new (and exceedingly onerous) obligation on Southwest.

Key here, Plaintiffs do not allege that Southwest had alternative flights to their intended destinations, let alone that those flights had available space.  Just the opposite. Paragraph after paragraph of the SAC details the breadth of Southwest's cancellations and the unavailability of flights.  [*See, e.g.,* Dkt. No. 37, ¶¶ 4 ("On Wednesday, December 28, 2022 alone, Southwest cancelled 2,500 flights."), 71 ("Nearly 16,000 flights canceled"), 75 ("Other airlines managed to recover by early in the December 2022 holiday week; at Southwest, the cancellations only increased.")] Plaintiff Grove's allegations are illustrative: because "Southwest was ***unable to rebook him*** on a same day flight," he opted to "rent a car and…drive from Oakland to San Diego." [Dkt. No. 37, ¶ 28.] That is not a breach.[3]

In sum, a breach of Section 9(a)(1) would require that Southwest had alternative flights to Plaintiffs' intended destinations; that those flights had available space; and that Southwest failed to transport Plaintiffs regardless. Because Plaintiffs make no such allegations (and indeed, allege the opposite), there is no cognizable breach of contract. Accordingly, the Court should dismiss Plaintiffs' contract claim.

### 2.    Plaintiffs Fail to Plausibly Allege Recoverable Damages.

The categories of recoverable contract damages are limited not only by general contract law principles but also by the terms of the contract itself. For example, contract damages are limited to damages that were a foreseeable result of a breach at

---

[3] Mary Smith, unlike other Plaintiffs, also alleges that Southwest ultimately offered her space on a flight (just one not to her liking). [Dkt. No. 37, ¶ 143.] But that is no more a breach than failing to provide a flight that does not exist (or on which space is not available). Specifically, she alleges that Southwest cancelled her flight from San Jose to Indianapolis, which was scheduled to depart on December 29, 2022. [*Id.* at ¶ 15-16.] She then alleges that "Southwest was unable to rebook her on a same day flight," so it booked her on "a flight for December 30, 2022." [*Id.* at ¶ 17 (emphasis added).]  That flight, too, was cancelled, and "***the next available*** flight on Southwest" from San Jose to Indianapolis "was not until after January 3, 2022[.]" [*Id.* at ¶ 19.] Smith opted not to take this flight, [*id.* at ¶ 20], but a passenger's unwillingness to wait for the "next flight[] on which space [was] available" is not a breach. [Dkt. No. 37, Ex. A, § 9(a)(1).]

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
COSTA MESA

9

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS PLAINTIFFS'
CONSOLIDATED SECOND AMENDED CLASS ACTION COMPLAINT
CASE NO. 3:23-CV-00306-AJB-AGS

the time the contract was made. *Stuart v. Bayless*, 964 S.W.2d 920, 921 (Tex. 1998). They are also limited by the parties' agreement. *Head v. U.S. Inspect DFW, Inc.*, 159 S.W.3d 731, 748 (Tex. App. 2005) ("In the absence of a controlling public policy to the contrary, contracting parties can limit their liability in damages to a specified amount."). Indeed, "[g]enerally under Texas law," these types of clauses "are enforceable." *BCC Merch. Sols., Inc. v. Jet Pay, LLC*, No. 3:12-CV-5185-B, 2015 WL 9259056, at *2 n. 1 (N.D. Tex. Dec. 18, 2015).

That is exactly what Southwest and Plaintiffs did here. In the CoC, the parties agreed that Southwest "shall not be liable for any consequential, compensatory, indirect, incidental, or punitive damages arising out of or in connection with the performance of its obligations under this Contract of Carriage." [Dkt. No. 37, Ex. A, § 1(a)(8).] And, "[f]or the avoidance of doubt," the CoC reiterated that "under no circumstances will [Southwest] be liable to Passenger or Customer for consequential damages." [*Id.* at Ex. A, § 9(a)(4).]

Plaintiffs do not claim that the CoC's limitation of liability provision is unconscionable, nor could they. [*See generally* Dkt. No. 37.]  Airline limitation of liability provisions are routinely upheld.  *See, e.g., Sam L. Majors Jewelers v. ABX, Inc.*, 117 F.3d 922, 930 (5th Cir. 1997) ("Carriers are allowed to limit their liability in the contract of carriage."); *Deiro v. Am. Airlines, Inc.*, 816 F.2d 1360, 1365 (9th Cir. 1987) (holding that airline passenger was "contractually bound by the limitation of liability").

Instead, Plaintiffs claim that Southwest's limitation of liability provision is an unenforceable "liquidated damages penalty." [Dkt. No. 37, ¶¶ 66, n. 5.]  But these two kinds of provisions are distinct, and Plaintiffs cite no case law to support their characterization; they simply assume that it is a liquidated damages provision and then discuss how and when a court can enforce one. [Dkt. No. 37, ¶ 73.] Even a brief review of Texas law on liquidated damages law, however, makes clear that Southwest's limitation of liability provision is no such thing.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
COSTA MESA

"Liquidated damages clauses fix in advance the compensation to a party accruing from the failure to perform specified contractual obligations." *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 664 (Tex. 2005). That is, a liquidated damages provision sets, at the outset, the amount of money the non-breaching party **will** recover in the event of a breach. *See, e.g.*, *Baker v. Int'l Rec. Syndicate, Inc.*, 812 S.W.2d 53, 54–55 (Tex. App. 1991) (finding that provision in contract stating that "[r]eimbursement for loss or damage shall be determined by a photograph's reasonable value which shall be no less than $1500 per transparency" was liquidated damages provision); *Phillips v. Phillips*, 820 S.W.2d 785, 789 (Tex. 1991) (holding that "[a] contractual provision like the one here by which one party agrees to pay the other some multiple of actual damages for breach of the agreement" is a "liquidated damages provision"); *Garden Ridge, L.P. v. Advance Int'l, Inc.*, 403 S.W.3d 432, 443 (Tex. App. 2013) ("[A] party can prove that a liquidated-damages clause is unenforceable and void as a penalty if it shows that the actual damages incurred by the other party are much less than or disproportionate to the contracted-for amount.").

By contrast, a limitation of liability provision imposes no penalty on Plaintiffs; it simply limits the **types** of damages Plaintiffs can seek in the event of a breach of contract. The CoC's limitation of liability provision is no different. Tellingly, Texas courts agree, finding that "[l]imitation of liability provisions are not subject to a [liquidated damages] penalty analysis because, by their nature, they cannot be used to penalize a party for a breach of contract." *Arthur's Garage, Inc. v. Racal-Chubb Sec. Sys., Inc.*, 997 S.W.2d 803, 810 (Tex. App. 1999); *Fox Elec. Co. v. Tone Guard Sec., Inc.*, 861 S.W.2d 79, 83 (Tex. App. 1993) (finding that a "limitation of liability" provision is "not a liquidated damage provision"); *Vallance & Co. v. DeAnda*, 595 S.W.2d 587, 590 (Tex. Civ. App. 1980) ("We hold that paragraph seven of the agreement is a valid limitation of liability. Although the term "liquidated damages" is used in the contract, the provision clearly limits liability to the amount of the service charge for six months.").

11

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED SECOND AMENDED CLASS ACTION COMPLAINT
CASE NO. 3:23-CV-00306-AJB-AGS

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
COSTA MESA

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
COSTA MESA

Properly characterized, the only remaining question is whether Plaintiffs have alleged any ***recoverable*** damages. They have not. As Plaintiffs themselves admit, Southwest refunded them for the price of their cancelled tickets.  [Dkt. No. 37, ¶ 7 (alleging that Southwest "just provided a refund/credit").]  Therefore, their only alleged damages are "the out-of-pocket expenses that Plaintiffs incurred to get to their city of destination." [*Id.* at ¶ 150.] Such damages, if foreseeable at all, are consequential damages.[4]  *See Kansas City S. v. Port of Corpus Christi Auth. of Nueces Cnty.*, 305 S.W.3d 296, 307 (Tex. App. 2009) (stating that "[c]onsequential damages are defined as those damages which result naturally, but not necessarily, from the defendant's wrongful acts" whereas "[d]irect damages…compensate for the loss that is the necessary and usual result of the act" (internal quotations and citations omitted)); *El Paso Mktg., L.P. v. Wolf Hollow I, L.P.*, 383 S.W.3d 138, 144 (Tex. 2012) (holding that the cost of buying a replacement product is a "consequential damage").

Because Plaintiffs fail to allege any recoverable damages, Plaintiffs' breach of contract must be dismissed.

### 3.  Southwest's Customer Service Plan Is Not a Contract.

Plaintiffs also reference Southwest's Customer Service Plan and claim that Southwest breached it at several points in the SAC.  [*See, e.g.,* Dkt. No. 37, ¶¶ 77.] The Customer Service Plan, however, is not a contract nor can it be "breached."

An enforceable contract requires mutual assent. *See Lyda Swinerton Builders, Inc. v. Oklahoma Sur. Co.*, 903 F.3d 435, 445–46 (5th Cir. 2018) (*citing Baylor Univ. v. Sonnichsen*, 221 S.W.3d 632, 635 (Tex. 2007).  With regard to the Customer

---

[4] If they are not foreseeable, they are not recoverable, even without a consequential damages waiver. *Gotch v. Gotch*, 416 S.W.3d 633, 637–38 (Tex. App. 2013) ("To recover consequential damages in a breach of contract action, the plaintiff must show that the damages sought were the natural, probable, and foreseeable consequence of the defendant's conduct."). Plaintiffs do not allege that their damages were foreseeable by Southwest at the time of contracting. For example, there are no allegations that Southwest was aware of hotel bookings or the necessity of the trip (such that the passenger would likely seek alternative transportation).

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
COSTA MESA

Service Plan, there was no "mutual assent."  Just the opposite: The CoC expressly states that the Customer Service Plan "is not a contract, and does not create any contractual obligations on the part of" Southwest.  [Dkt. No. 37, Ex. A, § 10(b)(1).]; *see also id.* (stating that the plan merely "reflects Southwest Airlines dedication to high quality customer service"). [Dkt. No. 37, Ex. A, § 10(b)(1).]  Clearly, no contract can be formed where the parties agree that the document in question is not one.

Further, even if the Customer Service Plan created contractual obligations, Plaintiffs' breach claim based on the Customer Service Plan still fails because they do not identify any provision within the Customer Service Plan that they believe Southwest breached.  *Innova Hosp. San Antonio, L.P. v. Blue Cross & Blue Shield of Georgia, Inc.*, 995 F. Supp. 2d 587, 602 (N.D. Tex. 2014) ("To plead a breach of contract claim, a plaintiff must identify a specific provision of the contract that was allegedly breached.").

Thus, to the extent Plaintiffs base their breach of contract claims on Southwest's Customer Service Plan, those claims must be dismissed.

**B.      Plaintiffs' Claim for Breach of the Implied Covenant Fails as a Matter of Law.**

After the Court's order dismissing Plaintiffs' breach of the implied covenant claim, only one question remains: were Plaintiffs and Southwest in a "special relationship" such that Texas law would imply into the CoC the duty of good faith and fair dealing? *Cole v. Hall*, 864 S.W.2d 563, 568 (Tex. App. 1993), *writ dismissed w.o.j.* (June 22, 1994) (noting that "Texas law does not recognize an implied duty of good faith and fair dealing in every contract or business transaction," with the exception of certain "special relationships"). The clear answer to that question is "no."

Under Texas law, such "special relationships" have generally been limited to relationships "between insurers and insureds, principal and agent, joint venturers, and partners." *Id.*  And Texas courts have rejected finding such a relationship between

(1) supplier and distributor, *Adolph Coors Co. v. Rodriguez*, 780 S.W.2d 477, 481 (Tex.App.—Corpus Christi 1989, writ denied); (2) mortgagor and mortgagee, *Lovell v. Western National Life Insurance Co.,* 754 S.W.2d 298, 303 (Tex.App.—Amarillo 1988, writ denied); (3) creditor and guarantor, *Federal Deposit Insurance Corp. v. Coleman*, 795 S.W.2d 706, 709 (Tex.1990); (4) lender and borrower, *Nance v. Resolution Trust Corp.*, 803 S.W.2d 323, 333 (Tex.App.—San Antonio 1990), writ denied per curiam, 813 S.W.2d 154 (Tex.1991); (5) franchisor and franchisee, *Crim Truck & Tractor v. Navistar International Transportation Corp.*, 823 S.W.2d 591, 596 (Tex.1992); and (6) issuer and beneficiary of letter of credit, *Central Sav. & Loan Ass'n v. Stemmons N.W. Bank*, N.A., 848 S.W.2d 232, 239 (Tex.App.—Dallas 1992, no writ). Texas courts have even "consistently rejected finding a duty of good faith and fair dealing owed by the employer to the employee." *Cole*, 864 S.W.2d at 568.

The relationship between Southwest and Plaintiffs is nothing like an insurer-insured, principal-agent, joint venturers, or partners relationship. As the Northern District of Texas put it, "[t]he only relationship which exists between [Plaintiffs] and [Southwest] was initially that of consumer and retailer and now that of plaintiff and defendant," and "[n]either of these relationships is special." *Roberts v. Dayton Hudson Corp.*, 914 F. Supp. 1421, 1423 (N.D. Tex. 1996). Plaintiffs' implied covenant claim must be dismissed.

### C. <u>Plaintiffs' Bailment Claim Must Be Dismissed (Again).</u>

In the CAC, Plaintiffs asserted a bailment claim, but it was "unclear…whether Plaintiffs' bailment claim [was] brought as a contract or tort claim." [Dkt. No. 36, 12:15-16.] Because a tort-based bailment claim is preempted by the Airline Deregulation Act, Plaintiffs appeared to "abandon" that claim during the briefing of Southwest's first Motion to Dismiss. [*Id.* 12:19-21.]

14

Here, Plaintiffs appear to reassert their bailment claim under a contract theory, but they fail to sufficiently plead the claim. [5] ***First,*** they cite to Section 7 of the CoC yet never allege a breach of that provision. [Dkt. No. 37, ¶¶ 169-186.]  Instead, they allege that Southwest breached various duties sounding in tort. [*See id.* at ¶ 174 ("Defendant, as bailee, owed Plaintiffs and all other Class members a duty of care to safeguard their luggage by maintaining adequate procedures and infrastructure to protect such luggage. In failing to maintain such adequate procedures and infrastructure, Southwest breached this duty.").]

***Second***, Plaintiffs fail to plausibly allege that they met the conditions precedent for a contractual bailment claim.  In dismissing the CAC, the Court nnoted that "the CoC requires passengers to notify Southwest of the claim and receive a baggage number, and must submit either a completed Lost/Delayed Report Receipt or a written correspondence." [Dkt. No. 36, 12:27-13:2.] Plaintiffs failed to allege that they "met these necessary conditions" in the CAC [*id.* at 13:2], and they fail again in their SAC.

Section 7(i)(8) of the CoC details the steps a passenger must take in order to submit a claim for lost, damaged, or delayed baggage. [Dkt. No. 37, Ex. A, § 7(i)(8).]  It states, in no uncertain terms:

> Claims. In the case of loss of, damage to, or substantial delay in delivery of Checked Baggage, a claim ***will not be entertained by…[Southwest]*** unless the following steps are completed by the Passenger:

---

[5] To the extent they base it in tort, the claim is preempted. *See, e.g., Hekmat v. U.S. Transportation Sec. Admin.*, 247 F. Supp. 3d 427, 433 (S.D.N.Y. 2017) (finding "that the ADA preempts plaintiffs' tort claims," including their bailment claims against JetBlue Airways Corporation); *Bary v. Delta Airlines, Inc.*, No. CIV.A.CV025202(DGT), 2009 WL 3260499, at *5 (E.D.N.Y. Oct. 9, 2009), *aff'd*, 553 F. App'x 51 (2d Cir. 2014) (finding preempted under the ADA the plaintiff's claim for bailment, which was based on the alleged "mishandling [of] plaintiff's merchandise bag, causing certain items to be lost or stolen"); *Alpine Fresh, Inc. v. Jala Trucking Corp.*, 181 F. Supp. 4d 250, 257 (D.N.J. 2016) (finding preempted the plaintiff's bailment claim under the identically worded Federal Aviation Administration Authorization Act).

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
COSTA MESA

15

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS PLAINTIFFS'
CONSOLIDATED SECOND AMENDED CLASS ACTION COMPLAINT
CASE NO. 3:23-CV-00306-AJB-AGS

(i) **In all cases**, the Passenger must notify the Carrier of the claim and receive a Baggage report number not later than four (4) hours after either:

    (a)  Arrival of the flight on which the loss, damage, or delay is alleged to have occurred, or;

    (b)  Receipt of the Baggage, whichever is applicable to the claim; and

(ii) **In all cases**, the Passenger must submit either:

    (a)  The completed Lost/Delayed Report Receipt form provided by the Carrier, or;

    (b)  A written correspondence that includes the Baggage report number to the Carrier not later than twenty-one (21) days after the occurrence of the event giving rise to the claim[.]

[*Id*. (emphasis added).]

Plaintiffs do not contend that these explicit conditions precedent to their bringing their bailment claim are somehow unenforceable or inapplicable to them. [*See generally* Dkt. No. 37.] Instead, they assert that their performance of them "should be excused or deemed futile because it was impossible to submit a claim for the baggage as required by the COC during the class period when Southwest is not operating because of its defective Skysolver program." [*Id.* at ¶ 183.]

But while conditions precedent may be "excused" under Texas law, "the fact of…excuse of nonperformance must be alleged and proved in order to warrant a recovery." *Sw. Associated Tel. Co. v. City of Dalhart*, 254 S.W.2d 819, 825 (Tex. Civ. App. 1952). Nothing in the SAC supports Plaintiffs' claim that their failure to comply with the CoC's conditions precedent should be excused.

To begin, Plaintiffs' claim that "at the time of the cancelations, Southwest's call center was shut down, and Southwest was completely unresponsive to Plaintiffs' request for their baggage" is a red herring. Section 7(i)(8)(ii) requires Plaintiffs to submit either: a "completed Lost/Delayed Report Receipt form" or "[a] written correspondence that includes the Baggage report number to the Carrier not later than twenty-one (21) days after the occurrence of the event giving rise to the claim." [Dkt.

16

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS PLAINTIFFS'
CONSOLIDATED SECOND AMENDED CLASS ACTION COMPLAINT
CASE NO. 3:23-CV-00306-AJB-AGS

No. 37, Ex. A, § 7(i)(8)(ii).]  Given that neither the written form nor the written correspondence could be submitted via Southwest's call center, Southwest's call center allegedly being "down" has no impact on Plaintiffs' performance of the condition precedent.  Furthermore, that Southwest's call center was allegedly "shut down" "at the time of the cancelations" is immaterial; per the CoC, Plaintiffs' written correspondence could be submitted up to 21 days after the cancellation. [*Id.*]

Just as important, the allegations of "long lines" at Southwest ticket counters [*Id.* at ¶ 180], and Plaintiff Smith's allegation that she "requested her luggage from Southwest" but "experienced a significant delay in receiving her luggage that lasted twelve hours," [*id.* at ¶ 182], are equally immaterial to the issue of excuse. The CoC required Plaintiffs to "notify the [Southwest] of the claim and receive a Baggage report number not later than four (4) hours after either: (a) [a]rrival of the flight on which the loss, damage, or delay is alleged to have occurred, or; (b) [r]eceipt of the Baggage, whichever is applicable to the claim." [*Id.* at Ex. A, § 7(i)(8)(ii).]

Here, Smith (and other Plaintiffs) never flew on the Southwest flights at issue; indeed, that is the crux of Plaintiffs' entire lawsuit.  Therefore, under the CoC, Smith (the only Plaintiff with any luggage-related claims) was merely required to notify Southwest of the delay in her receiving her luggage and receive a baggage report number within four hours of her ***ultimately receiving her luggage***.  [*Id.* at Ex. A, § 7(i)(8)(ii).]  In other words, delays prior to receiving her luggage—the only allegations present in the SAC—do not excuse performance of the CoC's notice requirement. [6]

Because Plaintiffs failed to satisfy the CoC's conditions precedent to bringing the bailment claim, their claim must be dismissed. *Peche v. Wavle*, No. SA19CA1217FBHJB, 2020 WL 7973919, at *6 (W.D. Tex. Apr. 28, 2020)

---

[6] Although Smith appears to be the only Plaintiff asserting a bailment claim, the same would be true of any other Plaintiff with baggage delays.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
COSTA MESA

1   (dismissing breach of contract claim for failure to allege satisfaction of conditions

2   precedent).

3   ## VI.    CONCLUSION

4           For the reasons given above, Plaintiffs have failed to state a plausible claim

5   against Southwest.

6           Further, Plaintiffs should not be granted leave to amend. They have now

7   collectively had at least six opportunities to state a viable claim against Southwest

8   arising out of the December 2022 disruption—the original complaints in each of the

9   four consolidated actions, the CAC, and now the SAC. Their failure to state a

10  viable claim at this juncture in the case shows that there are no viable claims to

11  plead.

12

13      DATED: July 15, 2024                         **BAKER & HOSTETLER LLP**

14                                                   By: *s/Matthew D. Pearson*

15                                                        Matthew D. Pearson

16                                                   Attorneys for Defendant
                                                     SOUTHWEST AIRLINES CO.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
COSTA MESA