1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**LAW OFFICE OF FRANCIS J. FLYNN, JR.**
Francis J. Flynn, Jr., SBN 304712
6057 Metropolitan Plz.
Los Angeles, California 90036-3211
Tele: 314-662-2836
Email: casey@lawofficeflynn.com

Maria C. Severson, Esq., SBN 173967
Michael J. Aguirre, Esq., SBN 060402
**AGUIRRE & SEVERSON, LLP**
501 West Broadway, Suite 1050
San Diego, CA 92101
Telephone: (619) 876-5364
Facsimile: (619) 876-5368

**ATTORNEY FOR PLAINTIFFS
AND THE PROPOSED CLASS**

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

## SAN DIEGO DIVISION

| | |
|---|---|
| In Re: Southwest Airlines Co. Flight Disruption Litigation<br><br>This Document Relates to: All Actions | **Lead Case No. 3:23-cv-00306-AJB-SBC**<br>**Consolidated with:**<br>**Case No. 3:23-cv-00313-AJB-SBC**<br>**Case No. 3:23-cv-00633-AJB-SBC**<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED SECOND AMENDED CLASS ACTION COMPLAINT**<br><br>**Hearing**<br> Date: 11/07/2024<br> Time: 2:00PM<br> Courtroom: 4A (4th Flr.) |

# TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................................1

II.   FACTS      ...............................................................................................3

      A.    SOUTHWEST'S OUTDATED SOFTWARE ................................3

      B.    SOUTHWEST'S FLIGHT CANCELLATION DEBACLE............3

      C.    AN ONGOING PROBLEM ............................................................5

      D.    SOUTHWEST'S SELF-IMPOSED OBLIGATIONS
            UNDER SOUTHWEST'S CONTRACT OF CARRIAGE .............5

III.  ARGUMENT.............................................................................................8

      A.    STANDARD OF REVIEW .............................................................8

      B.    PLAINTIFFS PROPERLY ALLEGE A CLAIM
            FOR BREACH OF CONTRACT BASED ON
            SOUTHWEST'S BREACH OF ITS "SELF-IMPOSED"
            CONTRACTUALLY PROMISES TO PLAINTIFFS ...................9

            1.    SOUTHWEST BREACHED ITS "SELF-IMPOSED"
                  CONTRACTUAL PROMISES TO PLAINTIFFS
                  OF AVAILABLE REMEDIES UPON
                  CANCELLATION OF FLIGHT........................................10

            2.    TEXAS LAW DOES NOT ALLOW LIQUIDATED
                  DAMAGES PENALTY, AND DEFENDANT'S
                  LIMITATION OF LIABILITY PROVISION
                  IS A LIQUIDATED DAMAGES PENALTY....................13

            3.    BECAUSE DEFENDANT'S REMEDY FAILED
                  OF ITS ESSENTIAL PURPOSE, THE
                  LIMITATIONS OF LIABILITY CLAUSE
                  DOES NOT APPLY IN THIS CASE.................................15

            4.    IN THE MORE SPECIFIC LIMITATION
                  OF LIABILITY PROVISIONS, SOUTHWEST
                  DOES NOT EXCLUDE COMPENSATORY
                  DAMAGES UPON CANCELLATION OF FLIGHTS .......16

            5.    BREACH OF DUTY TO PROVIDE A
                  REFUND IN SEVEN DAYS OR A
                  REASONABLE TIME PERIOD ........................................17

      C.    PLAINTIFFS PROPERLY ALLEGE A CLAIM
            FOR BREACH OF THE IMPLIED COVENANT
            OF GOOD FAITH AND FAIR DEALING .................................18

      D.    PLAINTIFFS' BAILMENT CLAIM IS NOT
            PREEMPTED UNDER *WOLENS* .................................................20

E. ALTERNATIVELY, PLAINTIFFS SHOULD RECEIVE LEAVE TO FILE AN AMENDED CONSOLIDATED COMPLAINT ..................................................22

IV. CONCLUSION ......................................................................22

# TABLE OF AUTHORITIES

**Cases**

*American Airlines, Inc. v. Wolens*,
  513 U.S. 219 (1995)................................................................20, 21

*Amoco Prod. Co. v. First Baptist Church of Pyote*
  611 S.W.2d 610, 610 (Tex. 1980) ........................................19

*Anderson v. Griffith*,
  501 S.W.2d 695, 700 (Tex. Civ. App. 1973) ...........................19

*Aranda v. Insurance Co. of North America*,
  748 S.W.2d 210, 212 (Tex. 1983) ........................................19

*Arnold v. Nat'l County Mut. Fire Ins. Co.*,
  725 S.W.2d 165, 167 (1987) ...............................................19

*Ashcroft v. Iqbal ("Iqbal")*,
  556 U.S. 662, 678 (2009) .......................................................8

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544, 556 (2007) ...................................................8, 9

*Bombin v. Southwest Airlines Co.*,
  529 F. Supp. 3d 411, 421 (E.D. Pa. 2021) .........................11, 16

*Castanares*,
  2021 WL 811455, at *5 ........................................................18

*Chembulk Trading LLC v. Chemex Ltd.*,
  393 F.3d 550, 555 (5th Cir. 2004) ........................................10

*Crim Truck& Tractor Co. v. Navistar Int'l Transp. Corp.*,
  823 S.W.2d 591, 593-94 (Tex. 1992)..................................18, 20

*Eng. v. Fischer*,
  660 S.W.2d 521, 524 (Tex. 1983) ........................................19

*Erickson v. Pardus*,
  551 U.S. 89, 93 (2007).........................................................8

*G. A. Stowers Furniture Company v. American Indemnity Company*,
  15 S.W.2d 544, 548 (1929) ..................................................19

*Gray v. Chesapeake Expl., L.L.C.*,
  No. SA-14-CA-1020-XR, 2015 WL 339744,
  at *5 (W.D. Tex. Jan. 26, 2015) ...........................................11

*Herrera*,
  2021 WL 673448, at *10........................................................18

*Hewlett-Packard Co. v. Benchmark Elecs., Inc.*,
  142 S.W.3d 554, 563 ....................................................1, 9, 13

*Hughes v. Southwest Airlines Co.*,
  961 F.3d 986, 991 (7th Cir. 2020) ........................................................16

*Hux v. S. Methodist Univ.*,
  819 F.3d 776, 781 (5th Cir. 2016) ........................................................18

*Kinzbach Tool Co. v. Corbett-Wallace Corp.*,
  138 Tex. 565 (1942).............................................................................19

*Kleiner v. Southwest Airlines Co.*,
  2009 WL 10674260, at *8-9 (N.D. Tex. 2009) ......................................18

*Lidawi v. Progressive Cty. Mut. Ins. Co.*,
  112 S.W.3d 725, 731-32  ......................................................................9

*Mastrobuono v. Shearson Lehman Hutton, Inc.*,
  514 U.S. 52, 62-63 (1995).....................................................................10

*Maxwell v. Lake*,
  674 S.W.2d 795, 798 (Tex. App. 1984).................................................10

*NuStar Energy, L.P. v. Diamond Offshore Co.*,
  402 S.W.3d 461, 466 (Tex. Ct. App. 2013) .....................................11, 12

*O'Farrill v. Gonzalez*,
  974 S.W.2d 237, 244 (Tex. App. 1998)..................................................9

*Parker v. Outhier*,
  146 Tex. 595, 599, 209 S.W.2d 759, 761 (Tex. 1948)...........................10

*Price v. Horace Mann Life Ins. Co.*,
  590 S.W.2d 644 (Tex. Civ. App. 1979)..................................................10

*Rio Grande Valley Sugar Growers, Inc. v. Campesi*,
  592 S.W.2d 340 (Tex. 1979) .................................................................14

*Ruiz v. CBL & Assocs. Props. Inc.*,
  2012 Tex. App. LEXIS 8020  .................................................................19

*Sanus/N.Y. Life Health Plan, Inc., v. Dube-Seybold-Sutherland Mgmt., Inc.*,
  837 S.W.2d 191, 199 (Tex. App. 1992)..................................................20

*Smith Int'l, Inc. v. Egle Grp., LLC*,
  490 F.3d 380, 387 (5th Cir. 2007) ..........................................................9

*Speed Boat Leasing, Inc. v. Elmer*,
  124 S.W.3d 210, 212 (2003) .................................................................19

*Spencer v. Corpus Christi Reg'l Transit Auth.*,
  (2018 Tex. App. LEXIS 6732, *1, *7 .....................................................19

*State of Tex. v. $281,420.00 in U.S. Currency*,
  312 S.W.3d 547, 551 (Tex. 2010)..........................................................21

*Subramanyam v. KLM Royal Dutch Airlines*,
    2021 WL 1592664, at *6 (E.D. Mich. Apr. 23, 2021) ............................18

*Texas Bank & Tr. Co. v. Moore*,
    595 S.W.2d 502, 509 (Tex. 1980) ...........................................................19

*Tex. Mut. Ins. Co. v. Ruttiger*,
    381 S.W.3d 430, 433 ...............................................................................19

*UMLIC VP LLC v. T& M Sales & Env't Sys., Inc.*,
    176 S.W.3d 595, 612 (Tex. App. 2005).................................................18

*Usher v. City of Los Angeles*,
    828 F.2d 556, 561 (9th Cir. 1987) ...........................................................9

*Walling v. Beverly Enterprises*,
    476 F.2d 393, 396 (9th Cir. 1973) ...........................................................9

*Woodward v. Liberty Mut. Ins. Co.*,
    No. 3:09-CV-0228-G, 2010 WL 1186323,
    at *5 (N.D. Tex. Mar. 26, 2010).................................................................9

*Velvet Snout, LLC v. Sharp*,
    441 S.W.3d 448, 451 (Tex. App. 2014).....................................................9

Statutes

California Commercial Code
    § 2719(3) ................................................................................................16

Texas Business and Commercial Code
    § 2.718(a).................................................................................................14
    § 2.719(a)(2) ...........................................................................................15
    § 2.719(b) ................................................................................................15
    § 2.719(c).................................................................................................16

Plaintiffs Mary Smith, Matt Grove, Paula Hill, Eva Piña, and Eric F. Capdeville, individually and on behalf of all others similarly situated as set forth herein, (collectively, "Plaintiffs") submit this Memorandum in Opposition to Defendant's Motion to Dismiss Plaintiffs' Consolidated Second Amended Class Action Complaint (hereinafter, "MTD" or "Motion") and respectfully requests that the Motion be denied for the reasons set forth below.

## I.   INTRODUCTION

Plaintiffs Mary Smith, Matt Grove, Paula Hill, Eva Piña, and Eric F. Capdeville, individually and on behalf of all others similarly situated as set forth herein, (collectively, "Plaintiffs") submit this Memorandum in Opposition to Defendant's Motion to Dismiss (hereinafter, "MTD" or "Motion") Plaintiffs' Consolidated Second Amended Class Action Complaint (hereinafter "SAC") and respectfully request that the Motion be denied for the reasons set forth below.

Defendant argues that Plaintiffs' newly contrived breach-of-contract theory—that Southwest breached its Contract of Carriage (CoC) by failing to provide Plaintiffs with alternative air transportation within a "reasonable" time following cancellation of their originally scheduled flights—**has no legal basis**. "Within a reasonable time" appears nowhere in the relevant contractual provision and inserting such a term—as Plaintiffs ask the Court to do here—would contradict express language that the offer of alternative transportation is limited to the "next flight(s) on which space is available to the Passenger's intended destination." (Def. Memo at 1)

Texas law is unambiguous that when a contract is silent regarding the date for an action to be taken, the courts will construe the contract as requiring such action to be taken within a reasonable time, with the question of reasonableness to be one for the trier of fact. *Hewlett-Packard Co. v. Benchmark Elecs., Inc., 142 S.W.3d 554, 563 (Tex. App.--Houston [14th Dist.] 2004, no pet).*

Indeed, Plaintiffs' claims are based on Southwest's voluntarily undertaken contractual obligations and thus are not preempted by the Airline Deregulation Act

OPP. TO MOT. TO DISMISS CONSOLIDATED SAC          CASE NO. 3:23-CV-00306-AJB-AGS

("ADA"). This case concerns Defendant Southwest Airlines Co.'s ("Southwest" or "Defendant") failure to provide its customers with rebooking on the next available flight **in a reasonable period of time** after canceling tens of thousands of flights in December of 2022/January of 2023 (as well as other periods identified in the class period). In doing so, Southwest breached its Contract of Carriage ("Contract" or "CoC"), which, in the plain language of the contract provides: ("**at the request of a Passenger**"): "In the event the Carrier cancels or fails to operate any flight according to Southwest Airlines published schedule, or significantly changes the schedule of any flight, or there is a significant delay," Southwest made the "self-imposed" promise of remedies to Plaintiffs to not just provide the option of a refund, but also to "Transport the Passenger at no additional charge **on Southwest Airlines next flight(s) on which space is available to the Passenger's intended destination** in accordance with Southwest Airlines established reaccommodation practices**"** (Dkt. No.37-1**, Exhibit A to SAC**, § 9(a)(1)), Southwest never made that option available to Plaintiffs, who requested it, in a reasonable period of time after cancellation. (*See, e.g.,* SAC ¶64.) For example, Mary Smith's flight was canceled on December 29, and she requested rebooking. She was rebooked for December 30, but that was also canceled, so she was rebooked on the next available flight on January 3, 2022 (assuming that the next available flight would even take off.) (SAC at ¶¶24-30) Not surprisingly, she purchased a replacement ticket to return home on Delta Air Lines. *Id.* If Defendant takes the position that at some point, there would have been available space on a Southwest flight and that this would be within a reasonable period of time, there is, at minimum, a disputed issue of fact of whether Defendant provides a Southwest plane with available space within "reasonable time."

Importantly in light of the motion to dismiss standard where Plaintiffs get all reasonable inferences and the sheer absurdity of Southwest's contractual argument; to wit, if it does not state a time period, it can take forever to perform for this or any other

/ / /

provisions of its contract, Defendants' motion to dismiss should be denied in its entirety.

## II.     FACTS

### A.     SOUTHWEST'S OUTDATED SOFTWARE

Southwest relies on crew-assignment software called SkySolver, an off-the-shelf application that it has customized and updated but that is nearing the end of its life. (SAC ¶84.) The program was developed decades ago and is now owned by General Electric Co. (SAC ¶85.) While Southwest does have major connecting airports, much of its schedule involves planes and crews crisscrossing the country -- a network that aviation watchers say is more vulnerable than legacy carriers' hub-and-spoke model which can contain a disruption to particular geographic regions. (SAC ¶86.) When something goes wrong, the Southwest software -- including the crew scheduling system tool -- the work of rebuilding that delicate network must be done manually. (SAC ¶97.) The result is that airline officials don't necessarily know where the crews on planes are. (SAC ¶99.) Crew schedulers in another department manually check which pilots and flight attendants meet strict federal rules on work hours -- rules meant to keep inflight safety professionals from excessive fatigue. (SAC ¶100.) The manual work meant crew members who could be working were instead stuck in lengthy phone queues waiting for instructions or for a hotel assignment to get their federally mandated rest. (SAC ¶102.)

Southwest has said its software isn't an end-to-end solution. Rather, it's a so-called backend algorithm that airlines can supplement with other software. (SAC ¶106.) The algorithm gathers input from other systems to provide recommendations to resolve crew-related disruptions, according to GE Aerospace. (SAC ¶106.)

### B.     SOUTHWEST'S FLIGHT CANCELLATION DEBACLE

Southwest's scheduling system hasn't changed much since the 1990s. (SAC ¶88.) Winter storms disrupted holiday travel during the 2022 holiday season, beginning on December 21st, leaving thousands of travelers stranded in airports around the United

States. (SAC ¶89.) However, not all domestic airlines were affected equally. Southwest Airlines flight cancellations accounted for the vast majority domestic flight cancellations, leaving travelers unable to visit loved ones over the holidays and attracting the ire of the federal government. (SAC ¶67.) As flights were getting cancelled around the country, it soon emerged that the root cause behind Southwest's cancellations was its outdated and ineffective technology, in particular, its crew scheduling system. (SAC ¶90.) Further compounding this issue, Southwest Airlines used an aggressive flight schedule that left it prone to greater cancellations than its competitors in the event of unusual conditions, such as nationwide storms. (SAC ¶90.)

Between December 22, 2022 and January 2, 2023, Southwest canceled nearly 16,000 flights, stranding thousands of passengers during one of the busiest travel weeks of the year. (SAC ¶91.) During that time, Southwest canceled more than half of its typical flight schedule, and by December 28th about 87% of all canceled flights in the US were from Southwest alone, according to industry trackers FlightRadar24 and FlightAware. (SAC¶ 111.) Southwest canceled nearly 16,0000 flights during the Christmas travel meltdown. (SAC ¶ 91.) During the winter storm, amid a huge volume of changes to crew schedules to work through, SkySolver couldn't handle the task of matching crew members and to flights they should work. (SAC ¶92.)

Southwest's software wasn't designed to solve problems of that scale, forcing the airline to revert to manual scheduling. "The magnitude and scale of this disruption stressed our technology and processes, forcing a great deal of manual processing," Southwest said. (SAC ¶93.) "Our crews are showing up in every way throughout this challenge." Other airlines managed to recover by early in the December 2022 holiday week; at Southwest, the cancellations only increased. (SAC ¶95.)

Plaintiffs were not given the choice of being transported on the next available flight because there was not a flight available in a reasonable period of time after cancellation. (SAC ¶¶ 20-26) For Plaintiff Capdeville, for example, his flight was canceled and there were no alternative Southwest flights to accommodate him to his

-4-

destination. (SAC ¶50-53.) Likewise, for example, Mary Smith's flight was canceled on December 29; she was rebooked for December 30, but that was also canceled, she was then rebooked on the next available flight on January 3, 2022 (assuming that the next available flight would even take off). (SAC at ¶¶ 20-26.)

## C.   AN ONGOING PROBLEM

The Christmas 2022 debacle was not an anomaly for Southwest. (SAC ¶59.) On June 13, 2020, the Baltimore Sun released an article titled "Southwest Glitch Delays BWI Flights: Problem With Computer System Affected Airports Nationwide, Airline's Website." (SAC ¶79.) This article discussed how Southwest Airlines experienced problems with its computer system for a significant part of an afternoon, causing "significant flight delay" at airports around the country. Specifically, for about three hours, visitors to Southwest.com could not check into their flights, purchase tickets, or check their flight's status. (SAC ¶79.) One traveler commented, "I'd like to know how a company as big as Southwest can have their whole server go down [. . .] Where's the backup plan?" (SAC ¶79.) According to FlightAware.com, this system failure delayed more than 600 flights that day and resulted in 17 cancelled flights. (SAC ¶80.)

In October 2021, Southwest canceled more than 2,000 flights over a four-day period. (SAC ¶114.) While the airline blamed the crisis partly on bad weather in Florida, Southwest canceled flights for far longer than its competitors. (SAC ¶114.) Similar to the December 2022 service mayhem, Southwest fared far worse than its competitors in October 2021. While Southwest canceled hundreds of flights in the days following the peak of October's disruption, competitors quickly returned to normal service. (SAC ¶115.)

## D.   SOUTHWEST'S SELF-IMPOSED OBLIGATIONS UNDER SOUTHWEST'S CONTRACT OF CARRIAGE

The Ticket and "Southwest Airlines Co. Contract of Carriage – Passenger" (hereinafter "Contract of Carriage" or "CoC") govern the dispute at issue. Southwest drafted the Contract of Carriage.

-5-

Every Southwest passenger air travel ticket incorporates by reference (including in some cases by hyperlink) and is governed by Southwest's Contract of Carriage. Southwest drafted the Contract of Carriage. (SAC ¶61.)

In the ticket and the Contract of Carriage, Southwest made the self-imposed promise and entered a contract with Plaintiffs to get them to their respective destinations. *See*, SAC ¶62; *See also*, Dkt. No.37-1, **Exhibit A to SAC** at p. 16 (CoC 4a. Tickets ("(1) No person shall be entitled to transportation except upon presentation of a valid Ticket or proof of identification acceptable to the Carrier to confirm that transportation has been purchased. Such Ticket shall entitle the Passenger to transportation subject to this Contract of Carriage and, in particular, certain terms and conditions as follows. (i) Such Ticket is valid between the points of origin and destination via the specific routing designated on the Passenger's itinerary only. [...].") Southwest reservations, purchases, ticketing, and/or transportation are governed by Southwest's Contract of Carriage. *See*, **Exhibit A**. (SAC ¶60.)

Section 9 of the Contract of Carriage governs in a situation where the Carrier cancels a flight, as was the case for Plaintiffs and other Class members. Specifically, with respect to Service Interruptions, the Contract of Carriage states:

> **9. Service Interruption**
> [...]
> a.       Failure to Operate as Scheduled
>
> (1) Canceled Flights or Irregular Operations. In the event the Carrier cancels or fails to operate any flight according to Southwest Airlines published schedule, or significantly changes the schedule of any flight, or there is a significant delay, **Carrier will**, ***at the request of a Passenger with a confirmed Ticket on such flight***, **take one of the following actions:**
>
> **(i) Transport the Passenger at no additional charge <u>on Southwest Airlines next flight(s) on which space is available to the Passenger's intended destination</u>**, in accordance with Southwest Airlines established reaccommodation practices; <u>**or**</u>
>
> **(ii)** ***<u>Following a request by the Customer</u>***, refund the unused portion of the Customer's fare in accordance with Section 4.c.

Dkt. No.37-1, **Exhibit A to SAC**, § 9(a)(1) at p. 50.

Indeed, in the applicable Contract of Carriage, in the plain language of the contract provides: ("**at the request of a Passenger**"): "In the event the Carrier cancels or fails to operate any flight according to Southwest Airlines published schedule, or significantly changes the schedule of any flight, or there is a significant delay," Southwest made the "self-imposed" promise of remedies to Plaintiffs to not just provide the option of a refund, but also to "Transport the Passenger at no additional charge **on Southwest Airlines next flight(s) on which space is available to the Passenger's intended destination** in accordance with Southwest Airlines established reaccommodation practices**"** (Dkt. No.37-1**, Exhibit A to SAC**, § 9(a)(1)), but that option was not made available to Plaintiffs in a reasonable period of time. (*See also*, SAC ¶64.) Just as Southwest cannot wait an unreasonable amount of time before providing a refund or credit, it cannot provide its customers with available space on one of its planes in some distant future. (SAC ¶65.) Accordingly, in the unique facts of this case, where Defendant breached its "self-imposed" promise to provide "transportation" […] "between the points of origin and destination via the specific routing designated on the Passenger's itinerary only" and failed to provide to passengers the option of a Southwest plane with availability within a reasonable period of time, Plaintiffs have a contractual right to get compensatory damages from Southwest, including the cost of a replacement ticket on a different airline that did have available airplanes, ground transportation, hotels, and other damages which naturally flow from Southwest's failures. Defendant cannot rely on its limitation of liability when it fails to give a promised remedy in its limitation for liability, and instead it must provide compensatory damages for that breached promise in its limitation for liability.[1] (SAC ¶66.)

---

[1] In addition, as explained in the next section, the limitations of liability is nothing more than a liquidated damages penalty as the refund of the ticket is not reasonably related to the cost of replacement ticket on a different airline under the unique facts of this case.

Plaintiffs requested that Southwest accommodate them on the next available flight with Southwest if available within a reasonable period of time. (SAC ¶67.) For example as alleged *supra*, Mary Smith's flight was canceled on December 29, 2022; she was rebooked for December 30, 2022 but that was also canceled, she was then rebooked on the next available flight on January 3, 2023 (assuming that the next available flight would even take off.) Not surprising, she purchased a replacement ticket to return home on Delta Air Lines. (SAC ¶68.)

Critically, Southwest's call center also stopped accepting calls during this time period for a length of time that discovery will establish. (SAC ¶69.) Furthermore, as discussed infra, Defendant had no future flights with space available based on the unfair, negligent, grossly negligent, and/or fraudulent conduct in how they maintained its software, a material fact unfairly, negligently, grossly negligently, and/or fraudulently omitted from Plaintiffs during the winter travel season of Christmas vacation break, when every lost day of vacation matters. (SAC ¶70.)

## III.  ARGUMENT

### A.  STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal ("Iqbal")*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly ("Twombly")*, 550 U.S. 544, 556 (2007)). "Facial plausibility" requires factual allegations "that allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. If a complaint alleges enough facts to state a claim for relief that is plausible on its face, a complaint may not be dismissed for failing to allege additional facts that the plaintiff would need to prevail at trial. *Twombly*, 550 U.S. at 570; *see also Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (*per curiam*) (plaintiff need not allege specific facts, the facts alleged must be accepted as true, and the facts need only give defendant "fair notice of what the…claim is and the grounds upon which it rests" (quoting *Twombly*, 550 U.S. at 555)). The factual

allegations must be enough to raise a right to relief above the speculative level. *Twombly*, 550 U.S. at 555. For purposes of evaluating a motion to dismiss, the court "must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party." *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). Any existing ambiguities must be resolved in favor of the pleading. *Walling v. Beverly Enterprises*, 476 F.2d 393, 396 (9th Cir. 1973).

### B. PLAINTIFFS PROPERLY ALLEGE A CLAIM FOR BREACH OF CONTRACT BASED ON SOUTHWEST'S BREACH OF ITS "SELF-IMPOSED" CONTRACTUALLY PROMISES TO PLAINTIFFS

To prevail on a breach-of-contract claim under Texas law, a plaintiff must prove: (1) there was a valid contract; (2) plaintiff performed his or her obligations under the contract; (3) defendant breached the contract; and (4) plaintiff suffered damages as a result of defendant's breach. *Smith Int'l, Inc. v. Egle Grp., LLC*, 490 F.3d 380, 387 (5th Cir. 2007); see also *Velvet Snout, LLC v. Sharp*, 441 S.W.3d 448, 451 (Tex. App. 2014) (to state a claim for breach of contract under Texas law, a plaintiff must allege "(1) the existence of a valid contract; (2) performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages to the plaintiff resulting from that breach").

When a contract is silent regarding the date for an action to be taken, the courts will construe the contract as requiring such action to be taken within a reasonable time, with the question of reasonableness to be one for the trier of fact. *Hewlett-Packard Company*, 142 S.W.3d 554, 563. Indeed, when a contract is silent on an issue, the trier of facts will infer reasonable terms and supply missing terms when necessary to effectuate the purpose of the parties under the agreement. *Lidawi v. Progressive Cty. Mut. Ins. Co.*, 112 S.W.3d 725, 731-32 (Tex. App.-Houston [14th Dist.] 2003, no pet.); *Woodward v. Liberty Mut. Ins. Co*., No. 3:09-CV-0228-G, 2010 WL 1186323, at *5 (N.D. Tex. Mar. 26, 2010); *O'Farrill v. Gonzalez*, 974 S.W.2d 237, 244 (Tex. App.-San Antonio, 1998, pet. denied).

/ / /

Courts frequently evaluate reasonableness in light of accepted industry practice. *See e.g., Maxwell v. Lake*, 674 S.W.2d 795, 798 (Tex. App.-Dallas 1984, no writ) (where contract was silent as to when an option to purchase real estate may be granted, the court looked to custom in real estate transactions to determine what is reasonable); *Price v. Horace Mann Life Ins. Co*., 590 S.W.2d 644 (Tex. Civ. App. - Amarillo 1979, no writ). Plaintiffs' allegations, at a minimum, creates at an issue of fact for the jury. *Parker v. Outhier*, 146 Tex. 595, 599, 209 S.W.2d 759, 761 (Tex. 1948) (finding that jury is authorized to determine intent of parties when contract is silent on an issue).

Furthermore, buttressing Plaintiffs' position is "the common-law rule of contract interpretation that a court should construe ambiguous language against the interest of the party that drafted it." *Mastrobuono v. Shearson Lehman Hutton, Inc.,* 514 U.S. 52, 62-63 (1995). A court should "interpret, to the extent possible, all the terms in a contract without rendering any of them meaningless or superfluous." *Chembulk Trading LLC v. Chemex Ltd.*, 393 F.3d 550, 555 (5th Cir. 2004)).

### 1. SOUTHWEST BREACHED ITS "SELF-IMPOSED" CONTRACTUAL PROMISES TO PLAINTIFFS OF AVAILABLE REMEDIES UPON CANCELLATION OF FLIGHT

Southwest Contract of Carriage provides the following remedies upon cancellation:

**9. Service Interruption**
[…]
a.      Failure to Operate as Scheduled

(1) Canceled Flights or Irregular Operations. In the event the Carrier cancels or fails to operate any flight according to Southwest Airlines published schedule, or significantly changes the schedule of any flight, or there is a significant delay, **Carrier will, _at the request of a Passenger with a confirmed Ticket on such flight_, take one of the following actions:**

**(i) Transport the Passenger at no additional charge on Southwest Airlines next flight(s) on which space is available to the Passenger's intended destination**, in accordance with Southwest Airlines established reaccommodation practices; **or**

(ii) ***Following a request by the Customer***, refund the unused portion of the Customer's fare in accordance with Section 4.c.

[…]

Dkt. No.37-1**, Exhibit A to SAC**, § 9(a)(1) at p. 50.

In *Bombin v. Southwest Airlines Co.*, where Southwest decided to give a credit instead of a refund, the district court denied Southwest Airlines' motion to dismiss on Plaintiffs' breach of contract claims because Section 10 of the Customer Service Commitment expressly vests customers, and not Southwest, with the discretion with what remedy to choose after cancellation, and "we cannot read that provision out of the contract." 529 F. Supp. 3d 411, 421 (E.D. Pa. 2021) (citing *NuStar Energy, L.P. v. Diamond Offshore Co.*, 402 S.W.3d 461, 466 (Tex. Ct. App. 2013) (instructing that we must "give effect to all of the contract's provisions"). *Bombin* cited with approval, *Gray v. Chesapeake Expl., L.L.C.*, No. SA-14-CA-1020-XR, 2015 WL 339744, at *5 (W.D. Tex. Jan. 26, 2015), which rejected the argument that the contract at issue was unambiguous and denying motion to dismiss because the Contract of Carriage does not unambiguously vest Southwest with discretion to select between a credit and refund when a flight is canceled or otherwise rescheduled). Unlike the instant case, in *Bombin* there were no flights available on any airline because of cancellations due to COVID-19, so there was a legitimate "impossibility" argument for why space on an available Southwest or other flight was not offered as promised.

Indeed, in the instant Contract of Carriage, in the plain language of the contract ("**at the request of the passenger**"), "In the event the Carrier cancels or fails to operate any flight according to Southwest Airlines published schedule, or significantly changes the schedule of any flight, or there is a significant delay," Southwest made the "self-imposed" promise of remedies to Plaintiffs to not just provide the option of a refund, but also to "Transport the Passenger at no additional charge **on Southwest Airlines next flight(s) on which space is available to the Passenger's intended destination** in accordance with Southwest Airlines established reaccommodation practices**"** (See, Dkt. No.37-1**, Exhibit A to SAC**, § 9(a)(1)), but that option was not made available to

-11-

Plaintiffs in a reasonable period of time. .(*See also*, SAC ¶64.)

Just as Southwest cannot wait an unreasonable amount of time before providing a refund or credit, it cannot wait an unreasonable amount of time to provide its customers with available space on one of its planes in some distant future. This would be an absurd reading of the contract, whose terms were solely drafted by Southwest. Also, to ignore this language and hold that Southwest does not have to provide its customers with a seat on a plane with available space, and instead can just provide a refund/credit as a remedy option, would be to ignore that remedy provision of the contract as well as it is the customer's choice of what remedy to choose. *NuStar*, 402 S.W.3d at 466 (instructing that we must "give effect to all of the contract's provisions").

Plaintiffs requested that Southwest accommodate them on the next available flight with Southwest if available within a reasonable period of time. For example, Mary Smith's flight was canceled on December 29; she was rebooked for December 30, but that was also canceled, she was then rebooked on the next available flight on January 3, 2022 (assuming that the next available flight would even take off.) (SAC at ¶¶24-28.) Not surprising, she purchased a replacement ticket to return home on Delta Air Lines. *Id.* In any case, to the extent the instant Complaint's allegations are lacking, Plaintiffs can amend their pleadings to demonstrate the unreasonable delay in waiting for a Southwest replacement flight. Southwest call center also stopped accepting calls during this time period.

Furthermore, as discussed *infra*, Defendant had no future flights with space available based on fraudulent conduct in how they maintained its software, a material fact fraudulently omitted from Plaintiffs during the winter travel season of Christmas vacation break, when every lost day of vacation matters.

If Defendant takes the position that at some point, there would have been available space on a Southwest flight and that this would have been within a reasonable period of time, there is, at minimum, a disputed issue of fact of whether Defendant

provided a Southwest plane to Plaintiffs with available space within a "reasonable time." *Hewlett-Packard Co. v. Benchmark Elecs., Inc., supra.*

Accordingly, in the unique facts of this case, where Defendant breached its "self-imposed" promise to provide the option of a Southwest plane with availability within a reasonable period of time, Plaintiffs have a contractual right to get compensatory damages from Southwest, including the cost of a replacement ticket on a different airline that did have available airplanes, ground transportation, hotels, and other damages which naturally flow from Southwest's failures. Defendant cannot rely on its limitation of liability when it fails to give a promised remedy in its limitation for liability, and instead it must provide compensatory damages for that breached promise in its limitation for liability.[2]

For the foregoing reasons, the action is sufficiently pled, and there are triable issues of material fact as to Southwest's breach of it promised remedy to Plaintiffs upon cancellation of its flights, and, therefore, its Motion to Dismiss should be denied as to Count I.

### 2.   TEXAS LAW DOES NOT ALLOW LIQUIDATED DAMAGES PENALTY, AND DEFENDANT'S LIMITATION OF LIABILITY PROVISION IS A LIQUIDATED DAMAGES PENALTY

At the beginning of the Contract of Carriage, Defendant makes this "self-imposed" promise:

> "**(8)  Unless specifically stated otherwise herein or where any limitation would expressly violate any applicable law, the Carrier shall not be liable for any underlined consequential, compensatory, indirect, incidental, or punitive damages arising out of or in connection with the performance of its obligations under this** Contract of Carriage."

(Dkt. 37-1, **Exhibit A** to SAC, CoC at §I(a)(8)). (SAC ¶71.)

---

[2] As explained in the next section, the limitations of liability is nothing more than a liquidated damages penalty as the refund of the ticket is not reasonably related to the cost of replacement ticket on a different airline under the unique facts of this case.

-13-

In addition to specific instances in the CoC where Southwest modifies its generic limitation of liability, Southwest, in its "self-imposed promises, also modifies its generic limitation of liability in the CoC to the extent such limitation expressly violates any applicable law. The applicable law, Texas law, expressly does not permit for a liquidated damages penalty in a contract under the facts of this case. In order to enforce a liquidated damage clause, the court must find: (1) that the harm caused by the breach is incapable or difficult of estimation, and (2) that the amount of liquidated damages called for is a reasonable forecast of just compensation". *See also* TEX.BUS. & COM.CODE § 2.718(a); *Rio Grande Valley Sugar Growers, Inc. v. Campesi*, 592 S.W.2d 340 (Tex. 1979).

Since actual damages (to wit, the out-of-pocket expenses that Plaintiffs incurred to get to their city of destination) are not uncertain nor would they be impossible or difficult to calculate, the liquidated damages provision substituting for actual damages expressly violates these applicable Texas laws. (SAC ¶74.) Indeed, Southwest's promised liquidated damages "remedy" for its cancellation is to offer them available space on the next Southwest plane and/or a credit or full refund to compensate its customers. In the unique facts of this case, where Defendant Southwest does not make a Southwest plane available with space for booking canceled customers, the remedy is limited to a credit or full refund to compensate customers. But when Plaintiffs' plane is cancelled, and Plaintiffs have to find another airline to fly them to their destination on the day of cancellation, while stranded at the airport, the cost of the day of, or next day plane ticket, other out of pocket expenses, and lost time in travel is so well in excess of Southwest's refunding or crediting of Plaintiffs' tickets or to make the amount Southwest paid to Plaintiff's an unreasonable measure of damages, and, therefore, an unlawful liquidated damages penalty. (SAC ¶75.) Additionally, the harm caused by the breach is not incapable or difficult of estimation as at the time of breach there is a fair market value for a replacement ticket, a replacement rental car, the cost of gas, the cost of replacement items, etc. (SAC ¶76.) Also, Southwest has breached its Contract of

-14-

Carriage and/or Customer Service Plan by failing to provide refunds within seven days for canceled tickets purchased with credit cards. (SAC ¶76.) Accordingly, the limitations of liability is an unlawful liquidated damages; therefore, Plaintiff states a claim for breach of contract, and Defendant's motion to dismiss should be denied.

Here, since actual damages (to wit, the out-of-pocket expenses that Plaintiffs incurred to get to their city of destination) are not uncertain nor would they be impossible or difficult to calculate, the liquidated damages provision substituting for actual damages is impermissible.

Next, as explained *supra*, Southwest's promised "remedy" for its cancellation is to offer them available space on the next Southwest plane and/or a credit or full refund to compensate its customers. In the unique facts of this case, where Defendant Southwest does not make a Southwest plane available with space for booking canceled customers, the remedy is limited to a credit or full refund to compensate customers. But when Plaintiffs' plane is cancelled, and Plaintiffs have to find another airline to fly them to their destination on the day of cancellation, while stranded at the airport, the cost of the day of, or next day plane ticket, other out of pocket expenses, and lost time in travel is so well in excess of Southwest's refunding or crediting of Plaintiffs' tickets or to make the amount Southwest paid to Plaintiff's an unreasonable measure of damages, and, therefore, an unlawful liquidated damages penalty. Accordingly, the limitations of liability is an unlawful liquidated damages; therefore, Plaintiffs state a claim for breach of contract, and Defendant's motion to dismiss should be denied.

### 3.   BECAUSE DEFENDANT'S REMEDY FAILED OF ITS ESSENTIAL PURPOSE, THE LIMITATIONS OF LIABILITY CLAUSE DOES NOT APPLY IN THIS CASE.

Pursuant to Texas Bus. & Com. Code Section 2.719(a)(2), "resort to a remedy as provided is optional unless the remedy is expressly agreed to be exclusive, in which case it is the sole remedy." However, "[w]here circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in this title." *See* Texas Bus. & Com. Code § 2.719(b).

-15-

For the reasons explained *supra*, Defendant did not provide a Southwest plane with available space in a reasonable period of time after cancellation; therefore, Defendant's remedy failed of its "essential purpose," and the limitations of liability does not apply. In its motion to dismiss, Southwest cited to this authority to show its application of these code sections to its affirmative defense in *this* instant case. (MTD 11-12, citing Cal. Com. Code § 2719(3) and Tex. Bus. & Com. Code Ann. § 2.719(c)),

### 4. IN THE MORE SPECIFIC LIMITATION OF LIABILITY PROVISIONS, SOUTHWEST DOES NOT EXCLUDE COMPENSATORY DAMAGES UPON CANCELLATION OF FLIGHTS

Judge Hamilton of the Seventh Circuit described the labyrinthine nature of Southwest's Contract of Carriage as "a puzzle." *Hughes v. Southwest Airlines Co.*, 961 F.3d 986, 991 (7th Cir. 2020) (Hamilton, J., concurring). In interpreting this puzzle, in *Bombin*, Southwest took the following position interpreting its Contract of Carriage: to the extent of any conflict in the Contract of Carriage terms, Southwest argued specific provisions control over more general ones. 529 F. Supp. 3d at 421. (citing *Lederer v. Lederer*, 561 S.W.3d 683, 693 (Tex. Ct. App. 2018) ("To the extent of any conflict, specific provisions control over more general ones.")

Plaintiffs adopt Southwest's argument in the *instant* action because of the more narrow limitation of liability provision contained in Section **9. Service Interruptions** does not exclude compensatory damages unlike the general limitations of liability provision contained in the Introduction of the CoC. Indeed, in its Introduction of the Contract of Carriage, Section 8, Southwest has a general provision regarding the limitation of liability that provides: **"Unless specifically stated otherwise herein or where any limitation would expressly violate any applicable law, the Carrier shall not be liable for any consequential, compensatory, indirect, incidental, or punitive damages arising out of or in connection with the performance of its obligations under this** Contract of Carriage."

/ / /

Nevertheless, **9. Service Interruptions**:

(4) Limitation of Liability. Except to the extent provided in Section 9.a., the Carrier shall not be liable for any failure or delay in operating any flight, with or without notice, **for reasons of aviation safety** or when advisable, in its sole discretion, due to Force Majeure Events, as defined above. **For the avoidance of doubt, under no circumstances will Carrier be liable to Passenger or Customer for consequential damages**. (CoC 9a).

Cancellations based on faulty and outdated software clearly fall under "**for reasons of aviation safety**," in this limitation of liability, Southwest does not expressly exclude compensatory damages. Also, throughout the CoC, Southwest has other specific limitations of liability provision that exclude just "consequential," and not specifically compensatory damages: **2. Reservations**: "consequential damages" is mentioned, not compensatory; and **6. Acceptance of Passengers** (same).

Accordingly, to take the position that Southwest has taken in litigation, the specific limitation of liability provision should control, and compensatory damages are not excluded in this case.

## 5. BREACH OF DUTY TO PROVIDE A REFUND IN SEVEN DAYS OR A REASONABLE TIME PERIOD

Southwest argues that it could not have breached the Contract of Carriage by failing to provide this refund "within seven days" because it was under no *contractual* obligation to do so in a specified time period. Southwest's Contract of Carriage, however, did contractualize the ADA regulations. In fact, Southwest made an affirmative agreement in the CoC itself to adhere to the ADA regulations. Specifically, the CoC states that it is "subject to applicable laws, regulations and rules imposed by U.S. or foreign governmental agencies" and that "[i]n the event of a conflict between the terms of [the CoC] and such applicable laws, regulations or rules, the latter shall apply." Therefore, Plaintiffs argued that, as a matter of contract, Southwest voluntarily agreed not to impose any Contract of Carriage terms in contradiction of the ADA regulations in issue here.

/ / /

Substantial authority supports Plaintiffs' interpretation. When examining a prior iteration of Southwest's Contract of Carriage, in *Kleiner v. Southwest Airlines Co.*, the court recognized that the "phrase 'subject to' can also expand parties' obligations," and held that Southwest had "contractualized [ADA] regulations" by using the phrase. 2009 WL 10674260, at *8-9 (N.D. Tex. 2009).

Even when an airline contract does not include a provision limiting the timeframe of refunds or providing planes with available space, courts have consistently held that where a contract calls for singular performance and 'no time is specified, a term calling for performance within a reasonable time is supplied.'" *Herrera*, 2021 WL 673448, at *10; see also *Subramanyam v. KLM Royal Dutch Airlines*, 2021 WL 1592664, at *6 (E.D. Mich. Apr. 23, 2021); *Castanares*, 2021 WL 811455, at *5.

Accordingly, Southwest breached its promise to refund in seven days.

### C.   PLAINTIFFS PROPERLY ALLEGE A CLAIM FOR BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING.

Texas law imposes an implied duty of good faith and fair dealing when there is "a special relationship between the parties governed or created by a contract." *UMLIC VP LLC v. T& M Sales & Env't Sys., Inc*., 176 S.W.3d 595, 612 (Tex. App. 2005) (internal citations omitted). The Fifth Circuit has held that special relationships arise in two contexts: (1) when a fiduciary relationship exists between the parties, and (2) when the parties are not formal fiduciaries, but "are nonetheless in a special or confidential relationship." *Hux v. S. Methodist Univ*., 819 F.3d 776, 781 (5th Cir. 2016) (citing *Crim Truck& Tractor Co. v. Navistar Int'l Transp. Corp*., 823 S.W.2d 591, 593-94 (Tex. 1992)).

Texas courts have broadly interpreted what can be considered "a special relationship" and have already found such a special relationship in a growing list of contractual settings in order to find that there is a implied duty of good faith and fair dealing. A non-exhausted list of special relationships include, but are not limited to, agency, partnerships, joint venture, and contracts governed by the U.C.C. *See, e.g.,*

-18-

*Eng. v. Fischer*, 660 S.W.2d 521, 524 (Tex. 1983) (J. Spears concurring) (collecting cases); *Amoco Prod. Co. v. First Baptist Church of Pyote*, 611 S.W.2d 610, 610 (Tex. 1980) (recognizing an implied covenant to act in good faith by the working interest owner in marketing the gas of its royalty owners*); Texas Bank & Tr. Co. v. Moore*, 595 S.W.2d 502, 509 (Tex. 1980) (finding when a nephew accepted transfers from his aunt as a joint tenant with survivorship rights, he also "consented to have his conduct measured by the standards of the finer loyalties exacted by the courts of equity" including good faith and fair dealing); *Anderson v. Griffith*, 501 S.W.2d 695, 700 (Tex. Civ. App. 1973) ("[g]ood faith ... and fair dealing should always prevail in any transaction in which one person is acting as the agent of another ...."); *Kinzbach Tool Co. v. Corbett-Wallace Corp.,* 138 Tex. 565 (1942) (good faith and fair dealing required from agent in every transaction on behalf of principal).

Texas courts classify contractual relationships with imbalanced bargaining power as special. See A*randa v. Insurance Co. of North America*, 748 S.W.2d 210, 212 (Tex. 1983)[3] A "special relationship" is one "where there is unequal bargaining power between the parties and a risk exists that one of the parties may take advantage of the other based upon the imbalance of power." *Ruiz v. CBL & Assocs. Props. Inc.*, 2012 Tex. App. LEXIS 8020. For example, a special relationship was found to have arisen out of parties' unequal bargaining power in the nature of insurance contracts. See *G. A. Stowers Furniture Company v. American Indemnity Company*, 15 S.W.2d 544, 548 (1929); *Arnold v. Nat'l County Mut. Fire Ins. Co.*, 725 S.W.2d 165, 167 (1987) (insurance company has exclusive control over claim evaluation, processing, denial).

Southwest, as a common carrier, is held to a higher standard of care as to its passengers. *Spencer v. Corpus Christi Reg'l Transit Auth.,* (2018 Tex. App. LEXIS 6732, *1, *7; see also *Speed Boat Leasing, Inc. v. Elmer*, 124 S.W.3d 210, 212 (2003). With its unequal bargaining power as to passenger contracts and its exclusive control

---

[3] Overruled in part by *Tex. Mut. Ins. Co. v. Ruttiger*, 381 S.W.3d 430, 433, (relating to employee claims against a workers' compensation carrier)

over passengers in its care, including exclusive control over processing and denial of passenger ticket claims, a special relationship exists to create a duty of good faith and fair dealing.

More importantly, Texas courts have held whether there is in fact a "special relationship" is a determination for the trier of fact. *See Crim Truc*., 823 S.W.2d at 594 ("The existence of a confidential relationship is usually a question of fact"); *Sanus/N.Y. Life Health Plan, Inc., v. Dube-Seybold-Sutherland Mgmt., Inc*., 837 S.W.2d 191, 199 (Tex. App. 1992) (refusing to reverse trial court's finding of special relationship because trial court was the "trier of fact").

Here, Plaintiffs have alleged the following facts to establish "a special relationship" between Plaintiffs and Defendant Southwest: Southwest had a duty of good faith and fair dealing due to its special relationship with Plaintiffs, where there was unequal bargaining power between Southwest and Plaintiff airline customers/passengers and a risk exists that Southwest may take advantage of them based upon the imbalance of power" (SAC ¶157); "Southwest is a common carrier in the business of carrying passengers and goods, and holds itself out for hire. As a common carrier, Southwest is held to a higher standard and degree of care to passengers" (SAC ¶158); and "Southwest had exclusive control over Plaintiffs relating to their flights, and later, relating to the processing and denial of claims." (SAC ¶159.)

Thus, viewing all well-pleaded allegations in the light most favorable to Plaintiffs, Plaintiffs has adequately alleged that Plaintiffs and Southwest had the special relationship required to state a claim for the Breach of the Duty of Good Faith and Fair Dealing under Texas Law. Defendants' Motion to Dismiss Plaintiffs' Breach of the Duty of Good Faith and Fair Dealing claim should be denied.

### D.    PLAINTIFFS' BAILMENT CLAIM IS NOT PREEMPTED UNDER *WOLENS*.

Under Texas law, to create a bailment there must be: (1) delivery of personal property from one person, the bailor, to another, the bailee, for a specific purpose; (2)

acceptance of delivery by the bailee; (3) an express or implied contract between the parties that the specific purpose will be realized; and (4) an agreement between the parties that the property will be either returned to the bailor or dealt with according to the bailor's direction. *State of Tex. v. $281,420.00 in U.S. Currency*, 312 S.W.3d 547, 551 (Tex. 2010).

Despite Defendants' contentions to the contrary, Plaintiffs have alleged a self-imposed contract promise that was breached against Defendants.  Plaintiffs seek to hold Southwest to the terms of their written bailment contract – containing self-imposed obligations regarding Baggage as contained in Section 7 of the CoC (Baggage), and, as detailed above such claims are not preempted under *Wolens*.

Section 7 of the Contract of Carriage (Baggage) provides:

> The Carrier will compensate the Passenger for reasonable, documented damages incurred as a direct result of the loss of, damage to, or substantially delayed delivery of such Baggage up to the limit of liability, provided the Passenger has exercised reasonable efforts and good judgment to minimize the amount of damage.

(SAC ¶169) Also, the parties entered into an express contract with respect to the baggage. See, SAC ¶61 ("Every Southwest passenger air travel ticket incorporates by reference (including in some cases by hyperlink) and is governed by Southwest's Contract of Carriage.) *See, e.g.*, Section 1 and Section 7 of the Contract of Carriage (Baggage) as it relates to the Southwests self-imposed undertaken regarding Baggage.

Plaintiffs and Class Members delivered and entrusted their luggage to Defendant for the purpose of enabling Defendant to conduct its business flying Plaintiffs and Class Members to their destinations. (SAC ¶170.)

Next regarding the notice requirement, Plaintiffs have alleged that it should be excused because at the time of the cancelations, Southwest's call center was shut down, and Southwest was completely unresponsive to Plaintiffs' request for their baggage. (SAC ¶179.) When Plaintiffs asked for their luggage, they were told to wait in another queue, and at some cases, passengers had to pick through piles of luggage to find their

-21-

own luggage. (SAC ¶181)  Indeed, Plaintiff Smith has alleged that she requested her luggage from Southwest, and she experienced a significant delay in receiving her luggage that lasted twelve hours. (SAC ¶182.) To the extent that this is a contractual requirement of notice to sue on the bailment contract, Plaintiffs' performance of notice should be excused or deemed futile because it was impossible to submit a claim for the baggage as required by the COC during the class period when Southwest is not operating because of its defective Skysolver program. (SAC ¶181.)

Because Plaintiffs have properly alleged a claim for breach / violation of Bailment and Plaintiffs' Bailment claims arise solely out of Southwest's self-imposed promise / undertakings regarding Baggage as stated in the Contract of Carriage, Plaintiffs' Bailment claim is not preempted and must not be dismissed.

**E. ALTERNATIVELY, PLAINTIFFS SHOULD RECEIVE LEAVE TO FILE AN AMENDED CONSOLIDATED COMPLAINT**

For the reasons stated herein, Plaintiffs seek leave to file on amended complaint, notably that Defendant Southwest breached its Contract of Carriage by not providing as promised Plaintiffs with the option to rebook on an available Southwest plane within a reasonable time period but the cancellation.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request the Court deny Southwest Motion to Dismiss for the reasons stated herein.

Dated:  July 30, 2024                    Respectfully submitted,

                                  By:    */s/Maria C. Severson*
                                         Michael J. Aguirre, Esq., SBN 060402
                                         maguirre@amslawyers.com
                                         Maria C. Severson, Esq., SBN 173967
                                         mseverson@amslawyers.com
                                         AGUIRRE & SEVERSON, LLP
                                         501 West Broadway, Suite 1050
                                         San Diego, CA 92101
                                         Telephone: (619) 876-5364

Francis J. "Casey" Flynn, Jr., SBN 304712
**LAW OFFICE OF FRANCIS J. FLYNN, JR.**
6057 Metropolitan Plz.
Los Angeles, California 90036
Telephone: 314-662-2836
Email: casey@lawofficeflynn.com

Brian P. Murray, Esq., Pro Hac Vice
**GLANCY PRONGAY & MURRAY LLP**
122 East 42nd Street, Suite 2920
New York, NY 10168
(212) 682-5340
Email: bmurray@glancylaw.com

Matthew B. Moreland, Esq. (to seek admission pro hac vice)
**JIM S. HALL & ASSOCIATES**
800 N. Causeway Blvd., Suite 100
Metairie, LA 70001
(504) 832-3000
Email: mmoreland@jimshall.com

**ATTORNEYS FOR PLAINTIFFS AND THE PROPOSED CLASS**

## CERTIFICATION

I HEREBY CERTIFY that on July 30, 2024, a true and correct copy of the foregoing was electronically filed with the ECF/CM Case Management System. Copies of the foregoing document will be served upon interested counsel via transmission of Notices of Electronic Filing generated by the system.

Dated:  July 30, 2024          By: */s/Maria C. Severson*