UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| *In Re: Southwest Airlines Co. Flight Disruption Litigation* | Lead Case No.:  23-cv-00306-AJB-SBC<br>Consolidated with:<br>Case No. 23-cv-00313-AJB-SBC<br>Case No. 23-cv-00633-AJB-SBC<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**<br><br>**(Doc. No. 40)** |

Presently pending before the Court is Defendant Southwest Airlines Co.'s motion to dismiss Plaintiffs Mary Smith, Matt Grove, Paula Hill, Eva Piña, and Eric Capdeville's (collectively, "Plaintiffs") Consolidated Second Amended Class Action Complaint ("SAC") pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. No. 40.) Plaintiffs filed an opposition to the motion to dismiss, (Doc. No. 42), to which Southwest replied, (Doc. No. 43). Pursuant to Civil Local Rule 7.1.d.1, the Court finds the instant matter suitable for determination on the papers and without oral argument. For the reasons stated herein, the Court **GRANTS** the motion to dismiss Plaintiffs' SAC.

///

///

///

1

# I.    BACKGROUND

## A.    Plaintiffs' Allegations

This purported class action arises from canceled flights by Southwest during the winter holiday season of 2022–2023. Between December 22, 2022, and January 2, 2023, Southwest canceled over 14,500 flights due to an alleged combination of an outdated software system and winter storms. (SAC, Doc. No. 37, ¶¶ 1–2.) Each of the named Plaintiffs purchased airline tickets from Southwest, and each had their flights canceled. (*Id.* ¶¶ 18–55.) For example, Plaintiff Mary Smith purchased a ticket for a flight on December 29, 2022 from San Jose, California to Indianapolis, Indiana, with a stop in Las Vegas, Nevada. (*Id.* ¶ 19.) While waiting at the airport on December 29, 2022, Smith waited for her delayed flight at the airport for over ten hours until Southwest canceled the flight. (*Id.* ¶ 20.) Southwest thereafter rebooked her for a flight for the following day, on December 30, 2022. (*Id.* ¶ 21.) However, on December 30, 2022, Southwest canceled that booked flight. (*Id.* ¶ 22.) After Smith was informed the next available flight would not be available until after January 3, 2023, she purchased a replacement flight through Delta Airlines. (*Id.* ¶¶ 23, 25.) Plaintiffs Smith, Hill, Piña, and Capdeville assert they were not refunded for the cost of their airline tickets within seven days of cancellation. (*Id.* ¶¶ 27, 40, 44, 55.) Plaintiffs Piña, Grove, and Capdeville further allege they were not reimbursed for their out-of-pocket expenses caused by the ticket cancellations within hours of the flight during the holiday season. (*Id.* ¶¶ 36, 45, 54.) Smith also asserts she was without her luggage for nearly twelve hours, which included her medication. (*Id.* ¶ 29.)

Plaintiffs bring claims for (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; and (3) violation of bailment. (*See generally* SAC.) Southwest moves to dismiss all three claims pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. No. 40.)

///

///

///

2

**B.    Contract of Carriage[1]**

The SAC alleges each Southwest passenger air travel ticket is governed by Southwest's Contract of Carriage ("CoC"), which was drafted by Southwest. (*Id.* ¶¶ 59, 61.) Section 9 of the CoC provides in relevant part:

Failure to Operate as Scheduled

(1) Canceled Flights or Irregular Operations. In the event the Carrier cancels or fails to operate any flight according to Southwest Airlines published schedule, or significantly changes the schedule of any flight, or there is a significant delay, Carrier will, at the request of a Passenger with a confirmed Ticket on such flight, take one of the following actions:

(i) Transport the Passenger at no additional charge on Southwest Airlines next flight(s) on which space is available to the Passenger's intended destination, in accordance with Southwest Airlines established re-accommodation practices; or

(ii) Following a request by the Customer, refund the unused portion of the Customer's fare in accordance with Section 4.c.

(CoC, Doc. No. 37-1, § 9.a.)  Regarding the application of the CoC and its limitations on damages, it states:

Unless specifically stated otherwise herein or where any limitation would expressly violate any applicable law, the Carrier shall not be liable for any consequential, compensatory, indirect, incidental, or punitive damages arising out of or in connection with the performance of its obligations under this Contract of Carriage.

(*Id.* § 1.a.(8).)  Moreover:

---

[1] Plaintiffs attached Southwest's Contract of Carriage, to which each passenger agrees to be bound when they make a reservation or accepts transportation on Southwest, to their SAC. (*See* CoC, Doc. No. 37-1, at 1). Because the Contract of Carriage was attached to the SAC, the Court may appropriately consider it at the pleading stage.

3

23-cv-00306-AJB-SBC

Limitation of Liability. Except to the extent provided in Section 9.a., the Carrier shall not be liable for any failure or delay in operating any flight, with or without notice, for reasons of aviation safety or when advisable, in its sole discretion, due to Force Majeure Events, as defined above. For the avoidance of doubt, under no circumstances will Carrier be liable to Passenger or Customer for consequential damages.

(*Id.* § 9.a.(4).)

The CoC also provides the following regarding passengers' baggage:

Claims. In the case of loss of, damage to, or substantial delay in delivery of Checked Baggage, a claim will not be entertained by the Carrier unless the following steps are completed by the Passenger:

(i) In all cases, the Passenger must notify the Carrier of the claim and receive a Baggage report number not later than four (4) hours after either:

(a) Arrival of the flight on which the loss, damage, or delay is alleged to have occurred, or;
(b) Receipt of the Baggage, whichever is applicable to the claim; and

(ii) In all cases, the Passenger must submit either:

(a) The completed Lost/Delayed Report Receipt form provided by the Carrier, or;

(b) A written correspondence that includes the Baggage report number to the Carrier not later than twenty-one (21) days after the occurrence of the event giving rise to the claim[.]

(*Id.* § 7.i.(8).)

Finally, the CoC includes a choice-of-law provision which provides:

Any and all matters arising out of or relating to this Contract of Carriage and/or the subject matter hereof shall be governed by, construed, and enforced in accordance with the laws of the United States of America and, to the extent not preempted by federal law, the laws of the State of Texas without regard to conflict of law principles, regardless of the legal theory upon which such

1    matter is asserted.

2

3    (*Id.* § 10.c.(1).)

4        **C.    Procedural Posture**

5        This case results from the consolidation of three putative class actions filed against

6    Southwest: (1) *Hill v. Southwest Airlines Co.*, No. 23-cv-00633-AJB-SBC, originally filed

7    in state court but removed to this Court; (2) *Smith v. Southwest Airlines Co.*, No. 23-cv-

8    00313-AJB-SBC, originally filed in the Northern District of California but voluntarily

9    transferred to this Court; and (3) the instant lead case *Grove v. Southwest Airlines Co.*, 23-

10    cv-00306-AJB-SBC. Additionally, the plaintiff in *Capdeville v. Southwest Airlines Co.*,

11    No. 2:22-cv-05590, originally filed in the United States District Court for the Eastern

12    District of Louisiana, dismissed his own action, and has been added as a named plaintiff.

13    Thereafter, Southwest moved to dismiss Plaintiffs' Consolidated Amended Class Action

14    Complaint, (Doc. No. 26), which the Court granted on June 11, 2024, (Doc. No. 36).

15    Plaintiffs filed their SAC on June 21, 2024. (Doc. No. 37.)

16    **II.    LEGAL STANDARD**

17        A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the pleadings

18    and allows a court to dismiss a complaint upon a finding that the plaintiff has failed to state

19    a claim upon which relief may be granted. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir.

20    2001). The court may dismiss a complaint as a matter of law for: "(1) lack of a cognizable

21    legal theory or (2) insufficient facts under a cognizable legal claim." *SmileCare Dental*

22    *Grp. v. Delta Dental Plan of Cal.*, 88 F.3d 780, 783 (9th Cir. 1996) (citation omitted).

23    However, a complaint survives a motion to dismiss if it contains "enough facts to state a

24    claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

25    (2007).

26        Notwithstanding this deference, the reviewing court need not accept legal

27    conclusions as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). It is also improper for the

28    court to assume "the [plaintiff] can prove facts that [he or she] has not alleged[.]"

5

*Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). On the other hand, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. The court only reviews the contents of the complaint, accepting all factual allegations as true, and drawing all reasonable inferences in favor of the nonmoving party. *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002), *superseded by statute on other grounds*, ADA Amendments Act of 2008, Pub. L. No. 110-325, §§ 4(a), 8, 122 Stat. 3555).

## III.  DISCUSSION

### A.  Breach of Contract

Southwest moves to dismiss Plaintiffs' breach of contract claim, asserting they fail to plausibly allege a breach and recoverable damages. (Doc. No. 40-1 at 12–18.) "A plaintiff asserting a claim for breach of contract must prove: (1) the existence of a valid contract; (2) the plaintiff performed or tendered performance as contractually required; (3) the defendant breached the contract by failing to perform or tender performance as contractually required; and (4) the plaintiff sustained damages as a result of the breach." *West Loop Hosp., LLC v. Houston Galleria Lodging Assocs., LLC*, 649 S.W.3d 461, 491 (Tex. App. 2022).

As an initial matter, Plaintiffs assert Southwest breached both its CoC and its Customer Service Plan. (*See* SAC ¶¶ 77, 135, 154.) Southwest asserts the Customer Service Plan is not incorporated by reference into the CoC, and the CoC specifically states the Customer Service Plan "is not a contract, and does not create any contractual obligations of" Southwest. (Doc. No. 40-1 at 9 (citing CoC § 10.b.(1)).) Plaintiffs do not respond to this argument. (*See generally* Doc. No. 42.) Accordingly, the Court finds Plaintiffs may not rely upon the Customer Service Plan in support of their breach of contract claim.

### 1.  "Within a Reasonable Time"

Plaintiffs newly assert in their SAC that Southwest breached the CoC by failing to provide to passengers a seat on a Southwest plane "within a reasonable period of time"

after cancellation. (SAC ¶¶ 65–67, 141–42.) Plaintiffs additionally argue Southwest breached the CoC by failing to provide refunds within seven days for canceled tickets purchased with credit cards. (*Id.* ¶ 154.)

"[I]f the contract is silent as to the time fixed for performing an act under the contract, the law presumes the parties intended a reasonable time." *Price v. Horace Mann Life Ins. Co.*, 590 S.W.2d 644, 646 (Tex. Civ. App. 1979); *see Hewlett-Packard Co. v. Benchmark Elecs., Inc.*, 142 S.W.3d 554, 563 (Tex. App. 2004) ("[W]hen a contract is silent regarding the date for an action to be taken, the courts will construe the contract as requiring such action be taken within a reasonable time."). However, "[c]ourts are not authorized to rewrite agreements to insert provisions that the parties could have included or to imply terms for which they have not bargained." *Houston Metro Ortho & Spine Surgery, LLC v. Juansrich, Ltd.*, NO. 14-19-00732-CV, 2021 WL 2799643, at *7 (Tex. App. July 6, 2021) (citing *Tenneco, Inc. v. Enter. Prods. Co.*, 925 S.W.2d 640, 646 (Tex. 1996)).

Southwest argues the CoC does not include any requirement that Southwest provide the "next flight on which space is available" within a reasonable period of time. (Doc. No. 40-1 at 13 (citing CoC § 9.a.(1)).) Specifically, Southwest asserts that if it (1) has no flight available to the intended destination, or (2) a flight exists but there is no space available, then it has not breached Section 9.a.(1) of the CoC. (*Id.*) Southwest further argues that an inferred "reasonable time" requirement is necessarily limited to the parties' express agreement, and it cannot be used to rewrite it. (*Id.*) Plaintiffs respond that when a contract is silent regarding the date for an action to be taken, the courts will construe the contract as requiring such action to be taken within a reasonable time. (Doc. No. 42 at 15.) Plaintiffs further assert Southwest "cannot wait an unreasonable amount of time to provide its customers with available space on one of its planes in some distant future." (*Id.* at 18.) Southwest replies that the CoC is not silent about when Southwest must perform its obligation to rebook a customer after a request is made. (Doc. No. 43 at 3.) Southwest asserts the CoC fixes the timing of Southwest's obligation to when an alternative flight to

the passenger's intended destination exists and space is available on said flight. (*Id.*)

Plaintiffs also argue that under Texas Business and Commerce Code Section 2.719, Southwest's remedy failed of its "essential purpose" because Southwest did not provide a Southwest plane with available space within a reasonable period of time after cancellation, and thus, the limitations of liability does not apply. (*Id.* at 21–22.) However, as noted by Southwest, Section 2.719 is a Uniform Commercial Code provision which applies only to the sale of goods, whereas the breach of contract claims in this case deal with services. *See MCR Oil Tools, LLC v. DMG Mori USA, Inc.*, No. 4:20-cv-00560-O, 2020 WL 13133311, at *3 (N.D. Tex. Sept. 15, 2020) ("Texas's version of the Uniform Commerce Code ('UCC') applies to the sale of goods." (citing Tex. Bus. & Com. Code. § 2.102)). Accordingly, the Court finds this argument inapplicable here.

As noted above, the relevant CoC provision states that in the event of a canceled flight, Southwest will, at the request of a passenger with a confirmed ticket on such flight, "[t]ransport the Passenger at no additional charge on Southwest Airlines next flight(s) on which space is available to the Passenger's intended destination[.]" (CoC § 9.a.(1)(i).)

The Court finds the language of the CoC controls and will not read into the CoC a requirement that Southwest provide an alternative flight "within a reasonable period of time." The CoC specifically provides a fixed time to provide an alternative flight in the event a flight is cancelled: (1) on Southwest's *next* flight to the passenger's intended destination (2) on which space is available. Indeed, to require Southwest to provide an alternative flight within a reasonable period of time where there is no flight to the destination on which space is available would add a new obligation on Southwest to transport the passenger, regardless of whether a flight is available to do so. (*See* Doc. No. 43 at 3.)

Moreover, Plaintiffs do not allege that Southwest had alternative flights to their intended destinations that had space available but were not offered to Plaintiffs. Indeed, Plaintiffs assert Southwest "continued to cancel flights . . . resulting in more than 14,500 flights cancelled[.]" (SAC ¶ 2.) Plaintiffs further state, as an example, that Smith ultimately

8

purchased a replacement ticket to return home on Delta Airlines because her original flight on December 29, 2022 was canceled, she was rebooked for December 30, 2022 but that was also canceled, "and she was then rebooked on the *next available flight* on January 3, 2023." (*Id.* ¶ 7.) Similarly, Grove's December 23, 2022 flight was canceled, and while he "requested that Southwest transport him on the next flight(s) on which space [was] available to his intended destination," he asserts Southwest was unable to do so in the time he requested and he thus rented a car to drive from Oakland, California, to San Diego, California. (*Id.* ¶¶ 33–35.)

Accordingly, the Court **GRANTS** Southwest's motion to dismiss Plaintiffs' breach of contract claim on this basis.

### 2.    "Within Seven Days"

Next, Southwest asserts that following the dismissal of their breach of contract claim in their previous complaint, "Plaintiffs pivoted, now claiming that Southwest's breach was not its failure to provide refunds but, instead, the inability to provide Plaintiffs with another flight 'on which space was available to the [Plaintiffs'] intended destination(s)' 'within a reasonable period of time after cancelation.'" (Doc. No. 40-1 at 13.) However, Plaintiffs' SAC, as in their previous Amended Complaint, alleges "Southwest has breached its Contract of Carriage . . . by failing to provide refunds within seven days for canceled tickets purchased with credit cards." Southwest does not address this in its motion to dismiss. (*See generally* Doc. No. 40-1.) However, Plaintiffs address this argument in their Response (Doc. No. 42 at 23–24), to which Southwest replies (Doc. No. 43 at 4–6).

"[D]istrict court[s] need not consider arguments raised for the first time in a reply brief." Zamani v. Carnes, 491 F.3d 990, 997 (9th Cir. 2007) (citation omitted); see also *FT Travel--New York, LLC v. Your Travel Ctr., Inc.*, 112 F. Supp. 3d 1063, 1079 (C.D. Cal. 2015) ("Courts decline to consider arguments that are raised for the first time in reply.") (collecting cases). "The court can properly consider evidence and argument offered in reply that is responsive to points raised in the non-moving party's opposition, however." *Sanchez v. Cnty. of San Bernardino*, No. CV 10–09384 MMM (OPx), 2014 WL 12734756, at *4

(C.D. Cal. Mar. 10, 2014). The Court finds Southwest's argument in response is not "new," as it properly rebuts arguments first raised in Plaintiffs' Opposition to Southwest's Motion to Dismiss. Accordingly, the Court turns to whether Southwest breached its contractual duty to provide a refund within seven days.

Plaintiffs argue Southwest made an affirmative agreement in the CoC to adhere to the Airline Deregulation Act ("ADA"), and thus, Southwest voluntarily agreed not to impose any CoC terms in contradiction of the ADA regulations.[2] (Doc. No. 42 at 23.) Plaintiffs contend that when an airline contract does not include a provision limiting the timeframe of refunds, courts have consistently held that where a contract calls for singular performance, "a term calling for performance within a reasonable time is supplied." (*Id.* at 24 (quoting *Herrera v. Cathay Pac. Airways. Ltd.*, No. 20-cv-03019-JCS, 2021 WL 673448, at *10 (N.D. Cal. Feb. 21, 2021)).) Without providing where in the CoC it allegedly adopts the ADA regulations, which ADA regulation allegedly applies, or explaining where the seven-day requirement comes from, Plaintiffs assert Southwest breached its promise to refund in seven days. (*Id.*)

Because neither party cites to the applicable CoC provision, the Court assumes they refer to the following provision:

> This *Contract of Carriage* is subject to applicable tariffs on file with the U.S. Department of Transportation and laws, regulations, and rules imposed by U.S. or foreign governmental agencies; however such tariffs, laws, regulations, and rules do not create any contractual or other obligations by the Carrier that are owed to the Passenger, the Customer, or any other person or entity, or any right of action as against the Carrier. If any portion of this Contract of Carriage conflicts with applicable laws, rules, or security directives from U.S. or foreign government agencies, the applicable laws, rules, or security directives shall govern.

---

[2] The Court notes Plaintiffs begin by stating, "Southwest argues that it could not have breached the Contract of Carriage by failing to provide this refund 'within seven days' because it was under no *contractual* obligation to do so in a specified time period." (Doc. No. 42 at 23.) However, Southwest makes no such argument in the instant motion to dismiss.

(CoC § 1.a.(1).)

Plaintiffs assert that *Kleiner v. Southwest Airlines Co.*, No. 3:08-CV-1975-F, 2009 WL 10674260 (N.D. Tex. Aug. 17, 2009), supports their interpretation. (*Id.*) In *Kleiner*, the court noted that because the Contract of Carriage states it was "subject to compliance with all applicable laws and governmental regulations," "the phrase 'subject to' can also expand parties' obligations." 2009 WL 10674260, at *8. Thus, the court held Southwest had "incorporated and contractualized" the applicable regulations raised by the plaintiffs. *Id.* at *9. However, the Fifth Circuit has noted that "simpl[y] referec[ing] . . . the need to comply with all applicable law" is not enough to render an obligation self-imposed. *Onoh v. Nw. Airlines, Inc.*, 613 F.3d 596, 600 (5th Cir. 2010). "That is especially true when, to grant a plaintiff relief, a court must 'reach beyond the contract and interpret a variety of external laws that were not expressly incorporated in the contract.'" *Bevacqua v. Sw. Airlines Co.*, No. 23-11036, 2024 WL 3673548, at *2 (5th Cir. Aug. 6, 2024) (quoting *id.*). The Fifth Circuit thereafter held that "a mere reference to 'applicable regulations'" that "does not specifically identify any particular regulation or body of regulations, nor . . . include any other language that would clearly indicate the contracting parties' intent to incorporate . . . [specific] regulation[s] . . . . does not constitute a 'self-imposed obligation' under *Onoh*." *Id.* Moreover, the Fifth Circuit in *Bevacqua* noted that the contractual language in *Kleiner* specifically identified which agencies' regulations applied, and, "[i]mportantly, it additionally included language indicating an intent for those regulations to contractually bind the parties, stating that 'many of [these regulations] are not specified herein but are nonetheless binding on [the defendant] and all passengers.'" *Id.* at *3 (quoting *Kleiner*, 2009 WL 10674260, at *1).

In reply, Southwest first asserts that where an airline's contract of carriage, like Southwest's CoC, uses "boilerplate contractual language guaranteeing compliance with international or domestic aviation laws," it "does not incorporate extraneous law into the terms of an airfare contract." (Doc. No. 43 at 5 (quoting *Daversa-Evdyriadis v. Norwegian Air Shuttle ASA*, No. EDCV 20-767-JGB(SPx), 2020 WL 5625740, at *4 (C.D. Cal. Sept.

11

17, 2020)).)

Here, the Court finds this case closer akin to *Onoh* and *Bevacqua*, as this case involves a mere reference to the U.S. Department of Transportation "and laws, regulations, and rules imposed by U.S. or foreign governmental agencies[.]" It does not specifically identify the ADA or its regulations, nor does it include language that would clearly indicate the contracting parties' intent to incorporate the ADA. Moreover, the CoC specifically states that "such tariffs, laws, regulations, and rules do not create any contractual or other obligations by the Carrier that are owed to the Passenger, the Customer, or any other person or entity, or any right of action as against the Carrier." Thus, this provision does not create a "self-imposed obligation" under *Onoh*. Accordingly, the Court finds Southwest was not required to provide a refund within seven days.

Importantly, as noted by Southwest, Plaintiffs do not allege they requested the refund that they received; rather, they allege they requested to be rebooked. (SAC ¶ 24 (Smith); ¶ 34 (Grove); ¶ 38 (Hill), ¶ 42 (Piña); ¶ 51 (Capdeville).) And, as stated in Section 9 of the CoC, in the event that Southwest "cancels or fails to operate any flight . . . , or significantly changes the schedule of any flight, or there is a significant delay, [Southwest] will, ***at the request of a Passenger*** with a confirmed Ticket on such flight" either transport the passenger at no additional charge on the next flight on which space is available, or, "***[f]ollowing a request by the Customer***, refund the unused portion of the Customer's fare in accordance with Section 4.c." (CoC § 9.a.(1) (emphasis added).) Thus, asserts Southwest, a customer request was a condition precedent to refund, and none of the Plaintiffs here allege to have made a refund request to Southwest. (Doc. No. 43 at 6; *see generally* SAC.) Indeed, these same arguments were raised in Southwest's previous motion to dismiss, and the Court dismissed Plaintiffs' breach of contract claim in part because Plaintiffs failed to address this argument. (*See* Doc. No. 36 at 9–10.) Plaintiffs' SAC again does not address this condition precedent. (*See* SAC ¶¶ 134–55.) For this reason, too, Plaintiffs' breach of contract claim based on a failure to provide a refund within seven days fails.

1    Based on the foregoing, the Court **DISMISSES** Plaintiffs' breach of contract claim

2    **WITH LEAVE TO AMEND**.

3         **3.    Damages**

4    Nevertheless, even if Plaintiffs had sufficiently pled a breach of the CoC, Southwest

5    asserts the CoC disclaims any liability for consequential, compensatory, or incidental

6    damages, precluding recovery of expenses due to flight cancelations. (Doc. No. 40-1 at 14–

7    17.) Plaintiffs respond that these provisions limiting their damages to the cost of the plane

8    ticket are a liquidated damages penalty in violation of Texas law. (Doc. No. 42 at 19–21.)

9    In reply, Southwest asserts a limitation-of-liability provision is not a liquidated damages

10   clause. (Doc. No. 43 at 6–7.)

11        As discussed above, the CoC states Southwest is "not liable for any consequential,

12   compensatory, indirect, incidental, or punitive damages arising out of or in connection with

13   the performance of its obligations under this *Contract of Carriage*." (CoC § 1.a.(8).)

14        "Liquidated damages clauses fix in advance the compensation to a party accruing

15   from the failure to perform specified contractual obligations[.]" *Valence Operating Co. v.*

16   *Dorsett*, 164 S.W.3d 656, 664 (Tex. 2005). By contrast, a limitation of liability provision

17   limits the types of damages a plaintiff can seek in the event of a breach of contract. Indeed,

18   Texas courts have held that "[l]imitation of liability provisions are not subject to a

19   [liquidated damages] penalty analysis because, by their nature, they cannot be used to

20   penalize a party for a breach of contract." *Arthur's Garage, Inc. v. Racal-Chubb Sec. Sys.,*

21   *Inc.*, 997 S.W.2d 803, 810 (Tex. App. 1999); *see, e.g.*, *Fox Elec. Co., Inc. v. Tone Guard*

22   *Sec., Inc.*, 861 S.W.2d 79, 83 (Tex. App. 1993) (holding that a penalty analysis was

23   unnecessary because the contract before it contained a valid limitation of liability and was

24   not a liquidated damage provision); *Vallance & Co. v. DeAnda*, 595 S.W.2d 587, 590 (Tex.

25   Civ. App. 1980) (noting that "contracting parties can limit their liability in damages to a

26   specified amount" and although the term "liquidated damages" was used in the contract,

27   "the provision clearly limits liability" and was enforceable).

28        Here, the Court finds unpersuasive Plaintiffs' argument that the limitation of liability

13

provision in the CoC is a liquidated damages clause. Indeed, Plaintiffs fail to address any of Southwest's arguments regarding the differences between limitation of liability provisions and liquidated damages clauses, and instead continually asserts the provision is one for liquidated damages. (*See* Doc. No. 42 at 20–21.)

Plaintiffs further assert, as they did in their previous Response to Southwest's first Motion to Dismiss, that they "adopt Southwest's argument" which it made in *Bombin v. Southwest Airlines Co.*, 529 F. Supp. 3d 411 (E.D. Pa. 2021); specifically, that the narrow limitation of liability in Section 9.a(4) of the CoC controls over the more general provision under Section 1.a(8), and Section 9 does not expressly exclude compensatory damages. (*Id.* at 22; *see* Doc. No. 30 at 25.) As such, Plaintiffs assert, compensatory damages are not excluded in this case. (Doc. No. 42 at 22.)  However, as the Court noted in its previous Order, Southwest did not raise this argument in the instant case and Plaintiffs offer no support for their contention that they may "adopt" an argument made by Southwest in an unrelated case. (*See* Doc. No. 39 at 10–11.) Indeed, upon review, it appears Plaintiffs merely copy-and-pasted this argument from their previous Response in Opposition to Southwest's first Motion to Dismiss without noting this argument was already rejected by the Court.

Based on the foregoing, the Court finds the CoC contains a limitation of liability clause—as opposed to a liquidated damages clause—which specifically prohibits "any consequential, compensatory, indirect, incidental, or punitive damages." Moreover, Plaintiffs have failed to allege any recoverable damages, as they do not allege Southwest failed to refund them for the price of their cancelled tickets. Instead, Plaintiffs request "actual compensatory damages" including "the out-of-pocket expenses that Plaintiffs incurred to get to their city of destination," including "a replacement ticket, a replacement rental car, the cost of gas, the cost of replacement items, etc." (SAC ¶¶ 150, 152; *id.*, Request for Relief ¶ B.) On this basis, too, Plaintiffs' breach of contract claim fails.

## B.   Breach of Implied Covenant of Good Faith and Fair Dealing

Plaintiffs assert in their SAC that Southwest had a duty of good faith and fair dealing

due to its special relationship with Plaintiffs, "where there was unequal bargaining power between Southwest and Plaintiff airline customers/passengers and a risk exists that Southwest may take advantage of them based upon the imbalance of power." (SAC ¶ 157.) "Southwest is a common carrier in the business of carrying passengers and goods, and holds itself out for hire. As a common carrier, Southwest is held to a higher standard and degree of care to passengers." (*Id.* ¶ 158.)

"Unlike California and other states, a duty of good faith and fair dealing [is] not implied into every contract under Texas law unless a special relationship exists between the parties." *Brentwood Invs. v. Wal-Mart Stores, Inc.*, No. C–95–0856 (EHC), 1998 WL 337968, at *9 n.9 (N.D. Cal. June 19, 1998), *aff'd*, 225 F.3d 661 (9th Cir. 2000). The "duty arises only by express contractual language or where 'a special relationship of trust and confidence' exists between the parties." *Garcia v. Webb Cnty. Dist. Atty.*, 764 F. Supp. 457, 460 (S.D. Tex. 1991). "The duty of good faith and fair dealing has been imposed in Texas only 'to protect parties who have a special relationship based on trust or unequal bargaining power.'" *Roberts v. Dayton Hudson Corp.*, 914 F. Supp. 1421, 1423 (N.D. Tex. 1996) (quoting *Natividad v. Alexsis, Inc.*, 875 S.W.2d 695, 697–98 (Tex. 1994)). Such "special relationships" include "those between insurers and insureds, principal and agent, joint venturers, and partners." *Cole v. Hall*, 864 S.W.2d 563, 568 (Tex. App. 1993). Moreover, Texas courts have held that a special relationship does *not* apply in the following instances: "(1) supplier-distributor; (2) mortgagor-mortgagee; (3) creditor-guarantor; (4) lender-borrower; (5) franchisor-franchisee; and (6) issuer-beneficiary of letter of credit." *Id.* (citations omitted). The Texas Supreme Court has also stated "that mere subjective trust alone was not enough to transform arms-length dealing into a fiduciary relationship." *Crowder v. Tri-C Res., Inc.*, 821 S.W.2d 393, 399 (Tex. App. 1991).

Here, Plaintiffs and Southwest did not agree by express contractual language that the implied covenant would apply. In fact, the CoC specifically states:

> To the extent that an implied covenant of good faith and fair dealing would otherwise be deemed applicable to this Contract of Carriage, the agreement to

23-cv-00306-AJB-SBC

transport the Passenger, or any aspect of the relationship between the Carrier, the Customer, and the Passenger, to the extent permissible by applicable state law *the implied covenant of good faith and fair dealing is hereby rendered inapplicable and is disclaimed.*

(CoC § 10.c.(3) (emphasis added).)

Southwest contends Count 2 should be dismissed because Plaintiffs and Southwest were not in a "special relationship" such that Texas law would imply a duty of good faith and fair dealing into the CoC. (Doc. No. 40-1 at 18.) In response, Plaintiffs argue Southwest and Plaintiffs have a special relationship due to the unequal bargaining power as to passenger contracts and Southwest's exclusive control over passengers in its care. (Doc. No. 42 at 25–26.) Plaintiffs further assert that because Southwest is a common carrier, it is held to a higher standard of care as to its passengers. (*Id.* at 25.)

In support, Plaintiffs rely on *Spencer v. Corpus Christi Regional Transit Authority*, No. 13-17-00099-CV, 2018 WL 4016948 (Tex. App. Aug. 23, 2018), which reiterated that "[t]he Texas Supreme Court has defined 'common carriers' as 'those in the business of carrying passengers and goods who hold themselves out for hire by the public' and that common carriers are 'held to a higher standard of care when transporting passengers.'" 2018 WL 4016948, at *4 (quoting *Speed Boat Leasing, Inc. v. Elmer*, 124 S.W.3d 210, 212 (Tex. 2003)). However, *Spencer* is distinguishable as it was decided on a negligence claim and made no discussion of whether a special relationship existed under the implied covenant of good faith and fair dealing due to this higher standard of care. *See generally id.*

Moreover, Plaintiffs fail to cite any case in which a special relationship exists between a common carrier and passenger, and the Court finds none. The cases cited by Plaintiffs are also distinguishable. *See Amoco Prod. Co. v. First Baptist Church of Pyote*, 611 S.W.2d 610, 610 (Tex. 1980), *abrogated by Amoco Prod. Co. v. Alexander*, 622 S.W.3d 563 (Tex. 1981) (specifically in the oil context, finding the standard of care owed by lessees to lessors was that of a reasonably prudent operator); *Texas Bank & Trust Co. v.*

16

*Moore*, 595 S.W.2d 502, 508–09 (Tex. 1980) (finding fiduciary relationship existed between nephew and aunt where the nephew handled the financial affairs of his aunt, and gained control of her accounts as her power of attorney and later as a co-owner of her accounts); *Anderson v. Griffith*, 501 S.W.2d 695, 700–01 (Tex. Civ. App. 1973) (holding that a real estate broker who represents a seller in a real estate transaction has a fiduciary duty to inform the seller "of all facts that come to his knowledge that are or may be material or which might affect his principal's right and interest or influence the action that he takes"); *Kinzbach Tool Co. v. Corbett-Wallace Corp.*, 138 Tex. 565, 573–74 (1942) (fiduciary duty existed where employer directed its employee to act as its agent in negotiating the purchase of an oil-field tool).

The Court finds Plaintiffs fail to establish the existence of a special relationship arising from their consumer transaction with Southwest. To be sure, Plaintiffs' assertion that "unequal bargaining power" due to Southwest's "exclusive control over processing and denial of passenger ticket claims" creates a special relationship would expand the breach of fiduciary duty to many seller/buyer transactions. Here, "[t]he only relationship which exists between [Plaintiffs] and [Southwest] was initially that of consumer and retailer and now that of plaintiff and defendant. Neither of these relationships is special." *Roberts*, 914 F. Supp. at 1423.

Finally, "[a]lthough we recognize that the existence of a confidential relationship is ordinarily a question of fact, when the issue is one of no evidence, it becomes a question of law." *Crim Truck & Tractor Co. v. Navistar Int'l Transp. Corp.*, 823 S.W.2d 591, 594 (Tex. 1992), *superseded by statute on other grounds as recognized in Subaru of Am., Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 225–26 (Tex. 2002)). Here, there are no facts, nor any supporting case law, to establish a special relationship between Plaintiffs and Southwest, and thus the Court finds this to be a question of law.

Based on the foregoing, the Court **GRANTS** Southwest's motion to dismiss Plaintiffs' second claim **WITH LEAVE TO AMEND**.

C.    **Bailment**

17

In the SAC, Plaintiffs cite to Section 7 of the CoC, which provides:

> The Carrier will compensate the Passenger for reasonable, documented damages incurred as a direct result of the loss of, damage to, or substantially delayed delivery of such Baggage up to the limit of liability, provided the Passenger has exercised reasonable efforts and good judgment to minimize the amount of damage. Actual value for reimbursement of lost or damaged property shall be determined by the documented original purchase price less depreciation for prior usage.

(CoC § 7.i.(i).)

Southwest asserts Plaintiffs' bailment claim, which appears to be raised under a contract theory, fails to state a claim. (Doc. No. 40-1 at 20.) Specifically, Southwest argues Plaintiffs fail to allege a breach of the CoC, but instead allege that Southwest breached various duties sounding in tort. (*Id.* (citing SAC ¶ 174 ("During the period of bailment, Defendant, as bailee, owed Plaintiffs and all other Class members a duty of care to safeguard their luggage by maintaining adequate procedures and infrastructure to protect such luggage.")).) As discussed in the Court's previous Order of Southwest's Motion to Dismiss, Plaintiffs' bailment claim is preempted by the ADA to the extent it is based in tort. (*See* Doc. No. 36 at 11–12.) Additionally, the Court finds Plaintiffs do not allege any documented damages incurred as a direct result of "substantial delayed delivery" of the baggage. Plaintiffs merely allege Smith experienced a twelve-hour delay in receiving her luggage. (SAC ¶¶ 182, 186.) On this basis, Plaintiffs' bailment claim fails.

Southwest further argues Plaintiffs fail to allege they met the conditions precedent in the CoC for a contractual bailment claim. (Doc. No. 40-1 at 20.) As provided above, the CoC requires passengers to notify Southwest of the claim and receive a baggage number, and must submit either a completed Lost/Delayed Report Receipt or a written correspondence. (CoC § 7.i.(8).) As in their previous Amended Complaint, Plaintiffs do not claim in the SAC to have met these necessary conditions. (*See* SAC ¶¶ 167–86.) Rather, Plaintiffs assert their "performance of notice should be excused or deemed futile because it was impossible to submit a claim for the baggage as required by the COC during the

class period when Southwest is not operating because of its defective Skysolver program." (*Id.* ¶ 183.) Specifically, Plaintiffs assert that "at the time of the cancelations, Southwest's call center was shut down, and Southwest was completely unresponsive to Plaintiffs' request for their baggage." (Doc. No. 42 at 27.) Southwest asserts this is a "red herring" because neither the written form nor the written correspondence required by the CoC could be submitted via Southwest's call center, and thus Southwest's call center allegedly being "down" has no impact on Plaintiffs' performance of the condition precedent. (Doc. No. 40-1 at 22.) Plaintiffs do not respond to his argument. (*See* Doc. No. 42 at 26–28.)

"A condition precedent to the right to maintain an action must be performed and the fact of performance or excuse of nonperformance must be alleged and proved in order to warrant a recovery." *Lidawi v. Progressive Mut. Ins. Co.*, 112 S.W.3d 725, 729 n.1 (Tex. App. 2003) (quoting *Trevino v. Allstate Ins. Co.*, 651 S.W.2d 8, 11 (Tex. App. 1983).

Here, the Court finds Plaintiffs' bailment claim fails on the separate basis that Plaintiffs did not satisfy the condition precedent, and on the facts alleged, are not excused from performance. As stated in the CoC, Plaintiffs were required to submit either a completed Lost/Delayed Report Receipt form or a written correspondence to Southwest, no later than twenty-one days after the occurrence of the event giving rise to the claim. (CoC § 7.i.(8)(ii).) Plaintiffs have not explained how Southwest's call center or Skysolver program being shut down prevented Plaintiffs from satisfying their condition precedent.

Based on the foregoing, the Court **GRANTS** Southwest's motion to dismiss **WITH LEAVE TO AMEND**.

///

///

///

///

///

///

///

## IV.    CONCLUSION

Based on the foregoing, the Court **GRANTS** Southwest's motion to dismiss **WITH LEAVE TO AMEND**. <u>This is Plaintiffs' final opportunity to amend</u>. Should Plaintiffs desire to amend their complaint, they must file a third amended complaint <u>no later than December 17, 2024.</u> Southwest must file a responsive pleading <u>no later than January 2, 2025.</u>

**IT IS SO ORDERED.**

Dated:  December 4, 2024

Hon. Anthony J. Battaglia
United States District Judge

23-cv-00306-AJB-SBC